### WAY v. JOHNSON *et al.*

1. A party cannot sit by and permit an incompetent or improper question to be asked a witness without objection, and, when he finds the answer is prejudicial to him, then move to strike out the answer, if the answer is responsive to the question. He should object to the question, and, if overruled, take his exception.

2. Before a vendee, under a contract for the purchase of land, can recover back money paid on the contract, he must show that he has performed the contract on his part, or tendered the amount to the vendor under the terms of the contract, or he must establish the fact that the contract has been rescinded by the parties,

3.  The refusal on the part of the vendor that will excuse the vendee from
complying with the terms of his contract on his part must be a distinct
and unqualified refusal to be further bound by the contract, or to ac-
cept any tender that might be made to him under the terms of the con-
tract by the vendee.

4.  J. & Co. entered into a contract with W to convey to him certain city
lots upon the payment of $5,000 cash, $1,000 of which was paid on the
execution of the contract by W., but he made no tender of the balance,
or any part of it.  *Held,* that W. could not recover back the $1,000 paid
without showing that the contract was rescinded or abandoned by the
consent of the parties.

(Syllabus by the court.   Opinion filed April 3, 1894.)

Appeal from circuit court, Hughes county.   Hon. HOWARD
G. FULLER, Judge.

Action to recover money paid by plaintiff upon a contract
for the purchase of real estate.   Judgment for defendants, and
plaintiff appeals.   Affirmed.

The facts are stated in the opinion.

*Dillon & Holmes,* for appellant.

The trial court based its decision in directing a verdict for
the defendants, upon the conclusion he derived from the evi-
dence, that "defendants had performed all the conditions of
their obligation and that a reasonable time had elapsed before
writing the letter of October 31, 1889, and that it would be nec-
essary before plaintiff could maintain his action to offer to per-
form his part of the contract."   Neither of the conclusions of
the court are applicable to this case.   It matters not whether
defendants performed their agreement or not and a reasonable
time elapsing before a rescision adds no weight to the result.
The question is, did the defendants rescind the contract, and
when that is decided in the affirmative, time is out of the con-
sideration as well as whether plaintiff offered to perform.   The
letter of October 31, 1889, was a rescision on the part of the de-
fendants.   When the defendants rescinded the contract the
consent of the plaintiff to the rescision was presumed, it was
then the duty of the defendants to refund all the money re-
ceived under the contract when they rescinded and to place the

parties in *statu quo.* Dakota Stock & Grazing Co. v. Price, 34 N. W. 97; Windmuller v. Pope, 14 N. E. 437; State v. Davis, 20 Atl. 1080; Choteau v. Iron Works, 7 S. W. 467; School District v. Hayne, 46 Wis. 514; Comp. Laws, Subdivision 2, § 3591; Bohall v. Diller, 41 Cal. 533; Doughton v. Camden Building Ass'n 7 Atl. 479; Frick v. Thomas, 25 Pac. 717; Symms v. Benner, 48 N. W. 472; Bowman v. Agess, 21 Pac. 405; Grant v. Law, 29 Wis. 99; Drew v. Pedlar, 25 Pac. 749; Lloyd v. Davis, 28 N. E. 232; Bennett v. Phelps, 12 Minn. 326.

The $1,C00 paid by the plaintiff, and to recover which this suit is brought, cannot be considered liquidated damages. The law does not allow parties to contract in such cases as to dam ages. Comp. Laws, § 3580, § 3581; Phelps v. Brown, 27 Pac. 420.

*Crawford & DeLand,* for respondents.

CORSON, J. This was an action to recover the sum of $1,000, paid upon the following memorandum of agreement, which is set out in the complaint: "Pierre, Dakota, 10—5— 1889. Received of W. H. Brown, for B. T. Way, $1,000, to apply on the purchase of Lots Nos. 13 to 18, inclusive, block 3, in Original Plat addition to the city of Pierre, according to the recorded plat thereof. Price $10,000. Terms, $5,000 cash on delivery of deed; balance as follows, to-wit: Assume mortgage incumbrance of $2,500, and give mortgage for $2,500, due in one year; deed to be delivered and money paid on or before 10 days. It is understood that time shall be given for registered mail to go to and return from Vermont. Deed and mortgage and notes to be deposited in bank awaiting return from draft. Sale subject to approval of owner. [Signed] Julius A. Johnson & Co." It is further alleged in the complaint, in substance, that the plaintiff never completed the said purchase; that on or about October 30, 1889, the said defendants notified the plaintiff that they had elected to revoke and abandon said contract and agreement, and that no deed of the property described

in the contract was delivered by said defendants; that the defendants still retain the $1,000 paid by plaintiff on account of said contract, and refuse to pay the same, although payment has been duly demanded. The defendants answered, denying certain allegations of the complaint, and setting up a counterclaim for breach of the contract on the part of the plaintiff. The case was tried to a jury, and at the conclusion of the evidence on the part of the plaintiff the court, on motion of the council for the defendants, directed a verdict for the defendants. The errors assigned in substance are that the court erred in not striking out certain evidence of witness Brown, given on his cross-examination, and in directing a verdict for the defendants. The facts proved or admitted are, in substance, as follows: That upon the execution and delivery of the memorandum agreement, and the payment of the $1,000 therein specified, and as a part of the same transaction, the defendants caused to be executed a warranty deed of the property described in the contract, and deposited the same as an escrow with the Citizens' Bank, of Pierre; and that at the same time the plaintiff executed his promissory note for $2,500 and a mortgage to secure the same upon the property described, and deposited the same as an escrow with the said bank. That said deed, note, and mortgage were still held as an escrow when this action was commenced, and were so held at the time of the trial of the same. That on or about October 31, 1889, the defendant Sutherland wrote to plaintiff, who was then in Dell Rapids, in this state, and who received the same about November, 2, 1889, a letter of which the following is a copy: "Pierre, South Dakota, Oct. 31st, 1889. B. T. Way, Esq., Dell Rapids, Dak.—Dear Sir: Inasmuch as you have failed to put up the money on purchase of lots in block 3, Original Pierre, we desire to say that we consider the money forfeited that has been paid on it. We regret very much that you have not been able to carry out your part of the bargain, but should be pleased to show you any favors that might aid you in making up what

you have lost, as you say, through the failure of others to come up with the money. If you are able to raise the money for the purchase of this property before we have sold it, should be disposed to allow you to purchase it at the old price, and in that event would allow you a discount of $1,000. We, however, do not wish to make any promises that would bind ourselves, or tie up the property. Yours truly, John Sutherland." It was admitted that said Sutherland was a member of the firm of Julius A. Johnson & Co. It was further shown that plaintiff has neither paid nor tendered to the defendants, or to either of them, or to the Citizens' Bank, the balance of the money specified in said contract, namely, $4,000; that the plaintiff, subsequently to the receipt of said letter, and on or about November 20, 1889, assigned the said contract to one Bunker, a resident of the state of Vermont, and at the same time conveyed to him by quitclaim deed the property described in said contract; that plaintiff has never demanded his note and mortgage of the bank, nor notified the said bank to return to defendants the deed deposited there, nor that the contract was at an end; that plaintiff considered that he had an equity in the property to the extent of $1,000, even after he received the letter; that the defendants refused to take $1,000 as payment for an option, but insisted that it must be paid as a part of the purchase price of the property, and was to be forfeited in case the contract was not carried out by the plaintiff.

It is stated in the appellant's abstract that it was admitted that Mr. Sutherland conveyed the said property to one Loofborrow about November 8, 1889. This is denied in the amended abstract of the defendants and respondents. An examination of the original bill of exceptions, made necessary by such conflicting statements in the abstracts, leads us to the conclusion that neither the assignment nor deed referred to, nor any record of the same, was introduced, received, or read in evidence. That statement in the appellant's abstract will therefore be disregarded.

On the trial, W. H. Brown, a witness called on behalf of the plaintiff, on cross-examination was asked the following question: "Was anything said about the paying back of the $1.000 to anybody, and what was said on the subject? A. Mr. Sutherland said that, of course if he, [plaintiff] did not get around with the money at that time, why, he would forfeit the thousand dollars." The appellant moved to strike out the answer as being incompetent, and not proper cross examination, and for the further reason that it tended to vary the express terms of a written contract. The motion to strike out the evidence was properly overruled, as the answer was responsive to the question. The objection should have been made to the question itself. This court fully considered this subject in Wendt v. Railroad Co., 57 N. W. 227, and in that case we said: "A party cannot sit by and permit an incompetent or improper question to be asked without objection, and, when he finds the answer is prejudicial to him, then move to strike out the answer."

The principal question in this case is, did the court err in granting the motion of the defendants to direct a verdict in their favor? For the purpose of determining this question the evidence must be considered as undisputed and it must be given the most favorable construction for the plaintiff that it will properly bear, and he must have the benefit of all reasonable inferences arising therefrom. It is contended by the appellant that the defendants, by the letter of Sutherland; rescinded and abandoned the contract, and that thereafter the plaintiff was not required to make any tender of the balance due on the con- tract, to entitle him to recover the money paid on account of the same. If the facts warrant the conclusion that the contract was rescinded, and at an end, then there would be much force in appellant's contention, as the case would then come within the exception to the general rule that a vendee, before he can claim that the vendor is in default, must show that he has ten- dered the balance of the purchase price, and demanded a deed,

But was the contract rescinded? The only evidence upon this question was the letter written by Sutherland to the plaintiff, under date of October 31, 1889. In our opinion that letter of itself is not sufficient to show that the contract was rescinded. As we have seen, the deed for the property was not withdrawn from the bank, but remained as an escrow ready for delivery to the plaintiff in case he paid the balance of the money he was to pay in order to entitle him to take the deed. The most that can be claimed for the Sutherland letter is, assuming that it was written by authority of the firm of Johnson & Co., that it was a proposition to rescind the agreement which the plaintiff could have accepted, and thus terminated the contract, but which it appears he did not accept or assent to. Subsequently to the receipt of the letter, and about 18 days after its receipt, the plaintiff assigned the contract to one Bunker, a resident of the state of Vermont, and at the same time conveyed to him by quit-claim deed the property described in the contract. He made no demand for his own note and mortgage deposited as an escrow, and at the time of the trial testified that he considered he had an equity in the property. These acts and claims were entirely inconsistent with any rescission of the contract, and showed clearly that he never assented to any rescission of the same. There was no recission by mutual consent, and no recission under the statute is claimed to have been made. Before the plaintiff can recover back the money paid on the contract, without first making a tender of the balance due, and demanding a deed, thus placing the vendors in default, he must clearly establish the fact that the agreement was rescinded or abandoned by mutual consent of the parties. Cleary v. Folger, 84 Cal. 316, 24 Pac. 280; Drew v. Pedler, 87 Cal. 443, 25 Pac. 749; Phelps v. Brown, 95 Cal. 572, 30 Pac. 774. So long as the contract remained in force and unrescinded or abandoned, there could be no recovery of the money paid upon the contract, unless the vendee showed a full performance or tender on his part. Scott v. Glenn, 87 Cal. 221, 25 Pac. 405;

Dennis v. Strassburger, 89 Cal. 583, 26 Pac. 1070; Easton v. Montgomery, 90 Cal. 307, 27 Pac. 280; Anderson v. Strassburger, 92 Cal. 38, 27 Pac. 1095. So long as the contract remained in force, he could not recover back the money paid. His right to recover in such case is based upon the fact that the contract is at an end. The fact that the plaintiff did not pay the balance of the money on his contract within the time specified therein did not confer upon Julius A. Johnson & Co. the right to rescind the same without the plaintiff's consent. Had he assented to it, he would have been required to treat the contract thereafter as at an end, and taken no further proceedings under it. But this he failed to do. After receiving the letter, he returned to Pierre, and continued to treat it as a subsisting and valid contract. He neither notified the bank to deliver to the defendants their deed, nor demanded his own note and mortgage. It is true, he says he abandoned the contract, but that is a statement of a mere conclusion of law. His acts show that he did not abandon it, but regarded it as in force up to the time of the trial. No act was done that in law constituted a termination of the contract by either party, and in law it was in force at the time of the trial.

It is further contended by counsel for appellant that the plaintiff was excused and relieved from making a tender and demanding his deed, as the defendants had notified him that they refused to carry out the terms of the contract. But we cannot agree with the counsel in this contention. No evidence was introduced to show that Julius A. Johnson & Co. ever in any manner refused to carry out the contract, or so notified the plaintiff. The only evidence upon this point is the letter of Mr. Sutherland. In this the defendant Sutherland did not refuse or indicate that the firm of Julius A. Johnson & Co. intended to refuse to comply with the terms of the contract, but, on the contrary, expressed a willingness to still comply with the terms of the contract, or what, in effect, is the same, to permit the plaintiff to take the property upon the same terms,

and credit him with the $1,000 paid. Sutherland says in his letter: "If you are able to raise the money for the purchase of the property before we have sold it, should be disposed to allow you to purchase it at the old price, and in that event would allow you a discount of $1,000." This cannot be considered a refusal to carry out the contract on the part of Julius A. Johnson & Co., especially in view of the fact that the deed deposited as an escrow was not withdrawn. The letter amounted simply to Mr. Sutherland's construction of the contract, in which he was evidently in error, as time does not seem to have been expressly made of the essence of the contract. The appellant does not seem to have agreed with Mr. Sutherland in the view he took of the contract, as he continued to treat the contract as in force, and deal with the property on the theory that he still had an interest in it. The refusal on the part of the vendors that will excuse the vendee from complying with the terms of his contract on his part must be a distinct and unqualified refusal on their part to be further bound by the contract, or to accept any tender that might be made under it. Grazing Co. v. Price (Neb.) 34 N. W. 97; Windmuller v. Pope (N. Y. App.) 14 N. E. 437. The appellant was in default himself,—failed to show that the agreement was abandoned or rescinded, and failed to show that the defendants had refused to fulfill the agreement on their part, or in any respect failed to comply with its terms. Under no principle of law, therefore, could the plaintiff recover in this action, and the court was clearly right in directing a verdict. The judgment of the circuit court is affirmed.

KELLAM, J., concurring.

FULLER, J., having presided at the trial of this case in the court below, took no part in this decision.