MARTHA D. MILLER vs. MEYER BRONSON.

PROVIDENCE—APRIL 4, 1904.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Specific Performance. Laches. Marketable Title.*

Upon a bill for specific performance of an agreement for the sale of land, it appearing that at the time appointed by the agreement there were three mortgages upon record, not then discharged; that complainant gave no notice to respondent that two of these had been released until six months after his objection to the title, when respondent's circumstances had changed; that there was still doubt as to the remaining mortgage, and a question of trust as to certain minors' interests, the title falls short of being a marketable one, and respondent is excused from performance.

BILL IN EQUITY for specific performance. Heard on bill and answer, and bill dismissed.

STINESS, C. J. This is a bill for specific performance, alleging that the parties entered into an agreement in writing, July 31, 1902, for the sale of a lot of land with a brick building thereon, on North Main and Stampers streets in Providence, for the sum of $5,400, the deed to be delivered on September 8th, 1902, and the complainant to occupy said premises, free of rent, until that time; that the respondent paid $100 on account of purchase money, and on September 8th the time was extended to September 15, 1902, to allow further time for the examination of the title. On September 15 the respondent refused to take the estate because of clouds upon the title.

(1) It is undisputed that three mortgages were then on record, covering this property, which were not discharged. Two of these had been transferred to Elisha C. Mowry. All these mortgages were executed nearly thirty years ago, but there is nothing to show for how long a time they may have been kept in force or that they were not valid incumbrances at the time of the alleged contract.

Upon the respondent's objection to the title by reason of these outstanding mortgages, the complainant obtained a

release from the heirs of Elisha C. Mowry as to the two mortgages transferred to him, and she claimed that the mortgage to Hennessey was paid, because said Mowry made a report to the Court of Probate of North Providence, in his capacity as guardian of Vashti W. Angell, and under authority given in settling the estate, that he had paid "J. B. Hennessey note, $1,166.26."

We do not think that the complainant has fully met the objections to her title so as to show that it is what is known as a marketable title, which the respondent has the right to have.

Quite likely the release by Mowry's heirs may be sufficient as to the mortgages transferred to him; but the complainant did not give notice to the respondent that such release had been secured until March 6, 1903. Meanwhile the respondent had lost the opportunity to raise a part of the purchase money by a mortgage, previously arranged, and had invested his own money in business, supposing that the purchase of this property had fallen through.

Although the rule in regard to time, as essential to a contract, is not the same in equity as at law, it would be manifestly inequitable to hold one to performance, after the time agreed on, when conditions have changed and injury would result to one not in fault. Fry on Sp. Per. 3d ed. §§ 1059, 1060; Secombe v. Steele, 61 U. S. (20 How.) 94; Cheney v. Libby, 134 U. S. 68.

In the present case there was an admitted cloud upon the title in the three mortgages mentioned. The complainant gave no notice to the respondent that two of these had been released, by the heirs of the apparent mortgagee, for nearly six months after his objection to the title. Even then the Hennessey mortgage remained, and we see no certain inference that the payment of a note for $1,166.26 includes the payment of a mortgage for $300. Beyond this, it appears by the amended answer that a trust conveyance for the payment of an annuity is involved in the title, from which a question may arise whether the interests of minor children may not remain notwithstanding a foreclosure under the conveyance.

We can not decide this point, because the parties are not before us, and questions of fact may be involved. But if, as it appears, a loan company declines to take a mortgage on the property in question, because its counsel will not certify the title, it falls short of a marketable title. The test of a marketable title is whether it is clear beyond a reasonable doubt and will not expose the purchaser to litigation. *Sturtevant* v. *Jaques*, 14 Allen, 523: *Jeffries* v. *Jeffries*, 117 Mass. 184. In *Stapylton* v. *Scott*, 16 Ves. 272, Lord Eldon said: "If there is a considerable, a rational, doubt, the court has not attached so much credit to its own opinion as to compel a purchaser to take the title."

In the present case there is a doubt as to the Hennessey mortgage; a question of a trust in the minor children, as stated; and a delay in notice of a removal of objections until the respondent's circumstances had materially changed. These facts are sufficient to excuse performance.

The bill is dismissed.

*William Fitch*, for complainant.

*Edwin C. Peirce*, for respondent.