LARSON, Respondent, v. THOMAS, Appellant.

(215 N. W. 927.)

(File No. 5667. Opinion filed November 14, 1927.)

1. **Vendor and Purchaser—Failure of Contract to Provide for Furnishing Abstract Does Not Affect Purchaser's Right to Rescind, Where Title Is Defective.**

Failure of contract to provide that abstract shall be furnished purchaser is immaterial in suit to rescind for defective title, as right of rescission depends on title offered, and not on abstract.

2. **Vendor and Purchaser—Purchaser's Right to Rescind for Inability of Vendor to Convey Title Contracted For May Be Waived.**

Right of purchaser to rescind contract for inability of vendor to convey title contracted for may be waived by delay or inconsistent conduct.

3. **Vendor and Purchaser—Settlement Made by Purchaser on Vendor's Assurance that Title Was in Proper Condition. Held Waiver of Right to Rescind for Title Defects.**

Where purchaser relied on vendor's assurance that title was in proper condition, and made settlement on that basis, without objection, after having one patent defect cured, purchaser waived examination of title and right to rescind because of defects.

4. **Vendor and Purchaser—Purchaser May Rescind for Title Defects Amounting to Substantial Failure of Consideration.**

Where defects in title are vital and substantial, amounting to substantial failure of consideration, purchaser may rescind.

5. **Vendor and Purchaser—Purchaser's Waiver of Right to Rescind by Accepting Abstract Without Examination Held Not to Prevent Subsequent Rescission, Where Vendor Refused to Cure Substantial Defects Later Disclosed.**

Purchaser who accepted title without examination of abstract, and thus waived right to rescind, held nevertheless entitled to rescission, where subsequent examination of abstract disclosed substantial defects which vendor refused to have removed.

6. **Vendor and Purchaser—Doubt or Uncertainty Sufficient to Form Basis of Litigation or Color of Outstanding Title Renders Title Unmarketable.**

While mere possibility or suspicion of defect in title will not warrant purchaser's refusal of it as unmarketable, doubt or uncertainty sufficient to form basis of litigation or color of outstanding title which may prove substantial renders title unmarketable.

7. **Vendor and Purchaser—Title May Be Rejected on Good Faith Opinion of Counsel if Doubtful Questions of Law Are Involved.**

Purchaser may reject title on good faith opinion of counsel, if any of questions involved are doubtful questions of law which would be objected to by most, if not all, reputable and competent attorneys.

8. **Vendor and Purchaser—Extraneous Evidence of Adverse Possession and Payment of Taxes Held Inadmissible to Prove Marketability of Title in Suit for Rescission.**

In suit by purchaser to rescind and recover purchase price on ground of adverse possession under sheriff's deed and payment of taxes held inadmissible to prove title marketable.

9. **Quieting Title—Vendor May Not Have Title Quieted in Purchaser's Rescission Suit in Which No Possible Adverse Claimant Is Party.**

Vendor may not have title quieted in purchaser's suit for rescission, for want of proper parties, where no possible adverse claimant is party to rescission suit.

**10. Vendor and Purchaser—Sale of Half Section in One Tract Under Mortgage Foreclosure, Unobjected To for Ovor 20 Years, Held Not to Render Title Derived from Purchaser Unmarketable.**

Sale of entire half section in one tract under mortgage foreclosure held not to render title derived from purchaser of property unmarketable after lapse of more than 20 years, where no objection was made to manner of sale during interval.

**11. Vendor and Purchaser—That Mortgage Foreclosed and Another Mortgage Were Recorded on Same Day, Hour, and Minute Held to Render Title Derived from Purchaser at Foreclosure Sale Unmarketable, Though Purchaser Was Holder of Other Mortgage.**

Fact that mortgage foreclosed was recorded on same day, hour, and minute as another mortgage, creating doubt as to question of priority, held to render unmarketable title derived from purchaser at foreclosure sale, notwithstanding mortgage foreclosed appeared first in records, and sale was made to person holding other mortgage.

**12. Vendor and Purchaser—Hazard of Litigation and Burden of Curing Title Defects Rests on Vendor.**

Where title is subject to hazard of litigation, such hazard must be borne by vendor who has burden of taking necessary steps to cure title either by litigation or in some other manner.

**13. Vendor and Purchaser—Rescission Held Properly Allowed Purchaser for Defective Title, Though No Offer Was Made to Turn Over Rent of Premises Until Time of Trial.**

In suit by purchaser against vendor to recover purchase price, rescission was properly allowed, where title was defective, though no offer was made by purchaser to turn over rent until time of trial.

**14. Vendor and Purchaser—On Purchaser's Recovering Purchase Price on Rescission, Vendor Was Entitled to Value of Use and Occupation of Premises During Period of Purchaser's Possession.**

In purchaser's suit for rescission, in which purchaser recovered price paid, vendor was entitled to value of use and occupation of premises during period of purchaser's possession, though premises were held by tenant who failed to pay rent.

---

Note.—See, Headnote **(1)**, American Key-Numbered Digest, Vendor and purchaser, Key-No. 112(1), 39 Cyc. 1406; **(2)** Key-No. 143, 39 Cyc. 1525; **(3)** Key-No. 143, 39 Cyc. 1527; **(4)** Key-No. 112(1), 39 Cyc. 1452, 1454, 1456; **(7)** Key-No. 130(2), 39 Cyc. 1452; **(8)** Key-No. 341(3), 39 Cyc. 2066; **(9)** Quieting title, Key-No. 30(2), 32 Cyc. 1347 (Anno.); **(10)** Vendor and purchaser, Key-No. 130(3), 39 Cyc. 1480; **(11)** Key-No. 130(3), 39 Cyc. 1479; **(12)** Key-No.

130(2), 39 Cyc. 1454; **(13)** Key-No. 116, 39 Cyc. 1427 (Anno.); **(14)** Key-No. 341(5), 39 Cyc. 2072 (Anno.).

For authorities passing on the question as to what is markeable title to real property, see annotation in 4 L. R. A. (N. S.) 1170; 38 L. R. A. (N. S.) 1; 27 R. C. L. 489 et seq.; 4 R. C. L. Supp. 1759.

Appeal from Circuit Court, Aurora County; HON. FRANK B. SMITH, Judge.

Suit by L. G. Larson against G. J. Thomas. From a judgment for plaintiff and an order overruling defendant's motion for a new trial, defendant appeals. Reversed and remanded, with directions.

*Muller & Conway,* of Sioux Falls, for Appellant.
*Laurits Miller,* of Mitchell, for Respondent.

BURCH, J. The purchaser's right to rescind a contract for the purchase of a tract of land in Aurora county is the chief question on this appeal. Defendant was the owner of the land on and prior to August 17, 1920, and on that day sold it at public auction for $23,680 to Larson, Townsend & Ricord. A written contract was then entered into between defendant and plaintiff, Larson. The other two did not sign the contract, although they had an interest in the transaction, and most of the subsequent dealings in reference thereto were with Townsend for the purchasers, and with defendant or his attorney for the vendor. Since the authority to act for another is not questioned, we will not differentiate between the persons acting, but will refer to such acts as the acts of the plaintiff or defendant without designating whether the act was in person or by agent. At the time the land was offered for sale the auctioneer announced the terms, but the contract did not in all respects conform to the announced terms. The parties seem to have attempted to carry out the terms as announced, and, since no complaint is now made on that ground, we will treat the subsequent acts as per contract.

Final settlement and transfer of title was to be made March 1, 1921. Prior to this plaintiff made two payments of $1,184 each, and defendant furnished plaintiff with an abstract of title. On this date plaintiff was to pay $2,512, give notes secured by mortgage on the land for $5,000, and assume a mortgage of $13,800, making the total consideration $23,680, and defendant was to convey by warranty deed. This was not then done, however, because plain-

tiff discovered the abstract showed the first mortgage to be $14,-800 instead of $13,800. Later, some time in May, plaintiff paid, $1,512, and executed the notes and mortgage of $5,000, and the deed was deposited in escrow until the amount of the first mortgage could be determined, when the balance of $1,000 was to be paid, if the first mortgage was in fact for the amount claimed by defendant. The abstract was corrected, and the amount of the first mortgage was found to be $13,800, but for some reason plaintiff delayed making the final $1,000 payment. Some time the fore pare of June defendant ordered a return of the deed to him. When plaintiff learned of the order to return the deed, he wrote defendant on June 18th as follows:

"Now we fail to understand this, when all the payments were met and the mortgage and notes were signed and delivered to you at our office and the only discepancy is the mortgage to Matt Gales, which was later adjusted, leaving a balance of $1,000.00 due Mr. Thomas, which will be paid when our attorney passes upon the abstract. The abstract with Miller & Mitchell's opinion was mailed to Mr. Thomas last week and we have the card acknowledging receipt thereof. These objections are vital and if Mr. Thomas is unable to meet them, we will be compelled to ask the return for all payments made together with pay for improvements made and papers delivered. We are requesting that the deed be held in escrow by the State Bank of Mitchell until this is adjusted."

Up to this time no attempt was made to rescind, but plaintiff had performed, except the payment of $1,000, and had promised to pay that on one or two occasions of an earlier date. For a long time there had been no effort to have the abstract examined by counsel. Plaintiff explains that he was misled into acceptance of the title without examination by representations of defendant or his counsel that the title was all right. Be that as it may, the abstract was finally examined by Miller & Mitchell, attorneys, and numerous objections were made, and the abstract returned to defendant as indicated in the above quoted letter. The defects in the title pointed out in Miller & Mitchell's opinion from their examination of the abstract not having been cured or any attempt made by defendant to cure them, in November, 1921, plaintiff gave notice of rescission, and in June, 1922, brought this action to cancel

the contract and recover payments made thereunder. The trial court rendered judgment in favor of plaintiff. From the judgment and an order overruling a motion for new trial defendant appeals.

[1] Respondent seeks to sustain a rescission because it is claimed the warranty deed does not convey a merchantable title. The written contract does not provide that an abstract shall be furnished, but we do not think this is material, as the right to rescind, if such right exists, depends upon the title offered, and not upon the abstract.

[2, 3] However, one may not always rescind a contract because the title contracted for cannot be conveyed. He may waive that right by delay or conduct inconsistent with the exercise of such right. In this case respondent did not have the abstract examined by an attorney promptly, but, as he explains, he relied on the assurance of appellant that the title was all right, and made settlement on that basis without objection. Prior to doing so he pointed out one patent defect discovered by him in the amount of the first mortgage. This defect was cured, and respondent then promised to complete the payments. This amounted to an agreement to accept the title without examination of the abstract. In Bates v. Smith, 48 S. D. 602, 205 N. W. 661, we held that, where one agrees to accept title to land without examination of title, he thereby waives his right to rescind because of defects in the title, and is thereafter only entitled to have such defects cured or damages for breach of warranty.

[4, 5] Respondent seems to have recognized this principle, for, after having the abstract examined, he returned it with counsel's objections, and gave appellant opportunity to cure the defects. For several months from June to November, no attempt to rescind was made, during which time appellant had an opportunity to cure the defects, if he could, or to compensate respondent, if there was any incurable defect. But during all this time, and for nearly a year until the commencement of this action, appellant made no move to perfect the title or compensate respondent. On the contrary, he was demanding the final $1,000, or a forfeiture of the contract. By such conduct he elected to stand on the title offered and refused any further performance on his part. Would this conduct restore the right to rescind or furnish a new cause therefor? Assuming that the defects were vital and substantial, one

ought not to be compelled to abide by a contract when a large part of the consideration therefor is denied him. A substantial failure of consideration is a ground for rescission. 24 Am. & Eng. Ency. (2d Ed.) 644; Kessler & Co. v. Parelius, 107 Minn. 224, 119 N. W. 1069, 131 Am. St. Rep. 459; Fossume et al v. Requa, 218 N. Y. 339, 113 N. E. 330. Appellant's refusal to cure the defects or further perform his obligations under the contract was a breach thereof on his part, and, if substantial, furnished a new cause for which respondent could rescind.

We are now faced with the question, Are the defects pointed out of such a character as to substantially lessen and reduce the consideration promised respondent? It is not seriously contended that, in a sale of this character, the purchaser is not entitled to a merchantable title. Respondent contends that a title may not be merchantable, although good in the sense that it cannot be successfully attacked, and can be successfully sustained in a court action. He says:

"A marketable title means not merely a title valid in fact, but a title that must be such as to make it reasonably certain that it will not be called in question in the future so as to subject the purchaser to the hazard of litigation with reference thereto and must be free from reasonable doubt as to any question of fact or law necessary to sustain its validity."

This is a definition given in 27 R. C. L. 490, and is amply supported by authority.

[6, 7] When and under what circumstances and condition of the title a purchaser can refuse to accept a conveyance on the ground that the title is not marketable, although it be in fact good, is not so readily determined. It may be said that, as a general rule, a purchaser is not bound to accept a conveyance, if the title is reasonably doubtful. Mere possibility or suspicion of defect is not sufficient, but, if there is a doubt or uncertainty sufficient to form the basis of litigation or color of an outstanding title which may prove substantial, the title cannot be said to be marketable. Turner v. McDonald, 76 Cal. 177, 18 P. 262, 9 Am. St. Rep. 189; Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 736; Herman v. Somers, 158 Pa. 424, 27 A. 1050, 38 Am. St. Rep. 851; 27 R. C. L. 489, §§ 207, 208, and 209. Respondent lays stress on the opinion of counsel as a de-

termining factor in ascertaining the marketability of a title. It has been held that a title was not marketable where a loan company refused a loan on the property because its attorney would not certify the title. Miller v. Bronson, 26 R. I. 62, 58 A. 257. A title may be rejected upon a good faith opinion of counsel, if any of the questions are doubtful questions of law. Walker v. Gilman, 127 Mich. 269, 86 N. W. 830. For other cases on the effect of opinion of counsel see Howe v. Coates, 97 Minn. 385, 107 N. W. 397, 4 L. R. A. (N. S.) 1170, 114 Am. St. Rep. 723; Moore v. Williams, 115 N. Y. 586, 22 N. E. 233, 5 L. R. A. 654, 12 Am. St. Rep. 844; Kane v. Rippey, 22 Or. 296, 23 P. 180; Harrass v. Edwards, 94 Wis. 459, 69 N. W. 69; McCroskey v. Ladd, 3 Cal. Unrep. 433, 28 P. 216. It is a common practice of purchasers of real estate to require an abstract which will be submitted to counsel for examination and opinion. If there are defects that will form the basis for objection, and which will be objected to by most, if not all, reputable and competent attorneys to which the abstract may be submitted, then the purchaser ought not to be compelled to accept such title, because he may not be able to procure a purchaser until such defects are cured. The defects impair the marketability, though they may not in fact impair the title.

[8, 9] In this case there is the opinion of respondent's counsel that the title is not marketable without certain corrections, which he points out; then there is the judgment of the trial court holding the title not marketable, and respondent contends the opinion of appellant's counsel to the same effect is evidenced by his efforts to establish the title in the trial of the case by extraenous evidence showing adverse possession. Appellant did offer evidence of continuous, uninterrupted possession under a sheriff's deed, and many years' payment of taxes, and argues in his brief that the title is good, giving as one of his reasons the possession and payment of taxes. The extraenous evidence to aid the title cannot be considered. It may be that the facts are such that appellant would have no difficulty in quieting his title, but he cannot do so in this action for want of proper parties, if for no other reason. No possible adverse claimant is a party here.

[10, 11] To test the bona fides of counsel's objection, we turn to the claimed defects in the record. There are eight objections made. The first refers to the first mortgage, which respon-

dent assumed, the second to 1920 taxes, which have been paid by appellant. Neither of these are now material. The third relates to a defect in the manner of sale in a mortgage foreclosure made in 1900. A sheriff's deed issued in 1901, and upon this deed the subsequent title rests. The mortgage covered a half section, including the quarter section involved in this action. The entire half section was sold in one tract, and, under the holding of this court in Fienup v. Kleinman, 42 S. D. 43, 172 N. W. 804, it is claimed this manner of selling the property rendered the sale void. The later decisions of this court, Nelson v. Caspary, 46 S. D. 632, 195 N. W. 522, and Hagan v. Pratt, 46 S. D. 267, 192 N. W. 370, show this objection to be untenable. Respondent urges that his objection was made before the later decisions were announced, and for that reason the objection was good when made. But we do not think the Fienup Case was applicable to a foreclosure where no objection was taken to the manner of sale within the period of redemption, and after the great lapse of time, more than 20 years, there could be no reasonable doubt as to the validity of the sale on this ground. A further objection to this foreclosure was made on the ground that the mortgage was one of two covering the same land recorded on the same day, hour, and minute, and, for that reason, it was impossible to tell which had priority. If the one that was foreclosed was prior, the foreclosure would bar the other; if not, the other would not be barred by the foreclosure. Answering this objection, appellant argues that the foreclosed mortgage was first recorded because it appears on the record in book 2, p. 447, while the other appears in book, 2, p. 448, and further that, if the other mortgage was not barred by the foreclosure, it belonged to the grantee named in the sheriff's deed when the deed issued, and was therefore merged, and was conveyed by a subsquent warranty deed to a later purchaser.

[12, 13] Respondent replies that because the foreclosed mortgage appears first on the record does not throw any light on the question of priority, because the mortgages were between the same parties, dated the same day, and were filed for record the same hour and minute, and that the most that can be said is that they stand on the same footing, and neither has priority, and, if that is true, the foreclosure of one would not cut out the other; that such facts are notice to a subsequent purchaser to put him upon inquiry

as to the actual priority of such mortgage, citing State Finance Co. v. Halstenson, 17 N. D. 145, 114 N. W. 724. He says there is nothing on the record that shows a merger; that merger depends upon the intent of the mortgagee, and the intention, when not expressed, is deducible from the circumstances; that the law presumes his intent to be in accord with his pecuniary interest, and for that reason the title must rest on presumptions or extrinsic evidence. He admits the mortgage is old and may be outlawed, but says no one taking a title can rely upon the statute of limitations without a showing that the statute has not been tolled or a decree of court quieting the title; that otherwise the title would rest on extrinsic evidence. The suggestions he makes present questions that a careful lawyer could not answer off hand and feel sure that his answer would be sustained in court, in the event of an adverse claimant armed with extrinsic evidence contradicting the presumptions necessary to support the title and the inferences that one might feel could be drawn from the record title shown. For this reason it cannot be said the title is free from reasonable doubt and therefore merchantable. We have but little doubt it could have been made merchantable by an action to quiet title, where extrinsic evidence could have been produced and the fact of adverse possession and long-continued payment of taxes could have been established. But we cannot prejudge such a case, nor know until the evidence is in what facts may appear. The hazard of such litigation must be borne by appellant. Or, if the defects could be cured in some other manner, the burden of the necessary steps was upon appellant. So long as appellant recognized the duty, and was making a sincere effort to perfect the title, respondent could not rescind, but, when appellant refused to proceed further with his contract, unless the title offered was a substantial fulfillment of the contract on appellant's part, respondent might then rescind for such breach. Appellant contends that respondent did not in fact rescind the contract, because he did not offer to restore possession and account for the rents and profits. It appears from the evidence that respondent went into possession by tenant; that, after the commencement of this action, neither being willing to further hold possession, by mutual agreement the tenant was continued in possession, and it is asserted by respondent that no rents for any of the time have been collected. On the trial re-

spondent offered to turn over the rent. If the rescission was incomplete when notice was given, this action is for rescission, and the court may allow it. Appellant has not offered in this action to perfect the title, but, on the contrary, has asked the cancellation of the contract for failure of respondent to pay the balance due. If the court denies a rescission, respondent must take the title as it is, for appellant offers no more, and denies any liability for failure to comply with the contract on his part. Under such circumstances he ought not to complain, if a rescission is allowed.

[14] But in allowing a rescission respondent should account for the value of the possession of the premises while held by him, although his tenant may not have paid the rent. In fixing the amount of respondent's damages in the judgment, no account appears to have been taken of the value of the use and occupation of the premises while in his possession, but the judgment appears to be for the full amount of the payments and improvements made by respondent. To this extent the judgment is erroneous and the judgment and order appealed from are therefore reversed and the cause remanded, with directions to the trial court to ascertain the value of the use and occupation of the premises during the period they were in possession of the respondent, and to deduct the amount so ascertained with proper interest from the recovery as allowed to the respondent in the judgment appealed from, and enter judgment accordingly and in harmony with this opinion. No costs will be taxed on this appeal.

CAMPBELL, P. J., and GATES, POLLEY, and SHERWOOD, JJ., concur.