[No. 22797. Department One. March 6, 1931.]

H. W. ZIEBARTH, *Appellant,* v. A. P. MANION *et al.,* *Respondents.*[1]

*Carkeek, McDonald & Harris,* for appellant.
*George F. Hannan,* for respondents.

MAIN, J.—This action was brought to recover the earnest money paid upon a contract for the purchase of real estate. The trial was to the court without a jury, and resulted in findings of fact from which the court concluded that no recovery could be had. Judg-

[1]Reported in 296 Pac. 561.

ment was entered dismissing the action, from which the plaintiff appeals.

April 2, 1929, and for some time prior thereto, the respondents A. P. Manion and wife were the owners of lots four and five, and a part of lot one, in block nine, White Center Addition to the city of Seattle, and on this day, through their agents, they contracted to sell the same to the appellant. Two hundred fifty dollars was paid at the time of entering into the contract, which was in the form of an earnest money receipt, and provided that seven hundred fifty dollars additional should be paid within five days, which payment was also made. The purchase price was seventeen thousand dollars, which included not only the lots mentioned, but a vacated alley adjoining.

The contract provided the manner in which the subsequent payments should be made, and it was specified therein that if the title was not good, and could not be made good within a reasonable time, the agreement would be void. The contract also provided that the property should be conveyed by deed, free and clear of all encumbrances, except as noted therein, which exceptions are not here material.

On or about April 15, 1929, Mr. Manion, one of the respondents, and the owner of the property, furnished a title report made by the Puget Sound Title Insurance Company. This was examined by the attorney for the appellant, and, in a written opinion dated May 2, 1929, certain defects in the title were pointed out. Subsequent to this report on the title by the attorney, the appellant learned that the building on lot six in the same block, which is immediately north of lot five, encroached upon the north side of lot five to a substantial degree. The building on lot six was of concrete construction.

On June 5, 1929, Mr. Manion wrote the appellant a letter, in which he recognized that the concrete building along the north line of lot five encroached upon that lot to a certain extent, and stated that he was prepared to remove that portion of the building if the appellant desired it to be done, and, in the same connection, suggested that the adjoining owner would pay liberally for the parcel of ground encroached upon. The appellant did not learn of the encroachment until subsequent to the time that his attorney wrote the opinion above mentioned, calling attention to defects in the title, as shown by the title report.

Sometime later the present action was begun, as above stated, to recover the earnest money paid, because the title was not good, and could not be made good within a reasonable time. An engineer, whose competency cannot be questioned, surveyed the property, and, as appears in the abstract, upon the trial testified as follows:

"My name is George Kumpf. I am a surveyor and have been for about twenty (20) years. Plaintiff's Exhibit 'A' for identification is a copy made by me as the result of an actual survey on the ground.

"The footing of the concrete garage building on the north extended beyond the lot line $7\frac{1}{8}$ inches beyond the easterly margin of 17th street southwest, and $3\frac{1}{2}$ inches on the westerly margin of McKinnon Road. Along the easterly margin of 17th avenue southwest, it is $7\frac{1}{8}$ inches and at the northeast corner of that garage it is $3\frac{1}{2}$ inches. The map, plaintiff's Exhibit 'A', is a sketch showing the encroachment of the footing, the area colored in blue thereon is the foundation footing of the concrete building, showing the run from the triangular shape encroaches $7\frac{1}{2}$ inches as I said before and runs out to nothing at the southeast corner of the building. The yellow coloring is an off-set of the wall approximately three or four feet above the ground; that also encroaches on lot 5. The pink color-

ing is a portion of the south wall of the garage above the off-set; that also encroaches on lot 5. This survey was made on the 25th of October, 1929.''

By this testimony, and it is in no manner disputed by the testimony of any other surveyor, it was shown that the footing of the building on lot six encroached upon lot five from seven and one-eighth inches to three and one-half inches.

H. C. Green, who owned lot six and the building thereon, on cross-examination testified in part as follows:

''Q. Did you understand you would have to cut off 7 8/10 inches on that corner? A. No, not that much. Q. You couldn't cut that much off, could you? A. No. The footings is the only thing,—the footings is the only thing that is over there besides three-quarters of the main—

''The Court: What is that?

''The Witness: Well, I am taking the surveyor's note for that, being three-quarters of an inch on the main body for 30 feet back from the front.

''Q. Well, had you known it required 7 8/10 inches at this corner as indicated by the engineer's explanation here, would you have been willing to take it off, or could it be taken off? A. Oh, yes, it could be taken off, that is the footage; that is not the wall,—the main wall. Q. Well, there is an off-set in that building isn't there, above the footings? A. Oh, yes, there is an inch or such a matter. Q. How high is that above the footings? A. On the back end there, it does not encroach at all. Q. This off-set in the front of the building encroaches three and one-half inches? A. I presume so, —about two and one-half; it may show that, yes.''

From the testimony quoted, it appears that the footing of the building extended over on to lot five from three and one-half inches to seven and one-eighth inches, and that a portion of the wall of the building extended over at least two and one-half inches.

█ The first question is whether the encroachment of the building on the north line of lot five was of such a substantial character as to render the title unmarketable.

In a comprehensive note to the case of *Larson v. Thomas,* 51 S. D. 564, 215 N. W. 927, 57 A. L. R. 1246, at page 1444, it is said:

"Encroachments upon the land purchased by executory contract, of buildings located upon adjoining land, will render the vendor's title unmarketable, if the encroachment is of a substantial character. An encroachment of 2 inches has been held to be substantial within this rule. Encroachments of from 1 to 3½ inches, 5½ inches, and from 2 to 10 inches, have also been held to be substantial, and to render the vendor's title unmarketable."

In support of this note, a number of authorities are cited. The rule of law embodied in the note appears to us to be reasonable and sound. The appellant in the case now before us was not required to accept title to the property for which he had contracted, burdened with the encroachment of the south wall of the building on the adjacent lot.

█ The next question is whether the appellant had a right to complain, after he had been assured that the owner of the building would remove the encroachment.

The owner of the building did testify that he was willing to remove the footing of the wall in so far as it encroached upon lot five, but his testimony, as above set out, makes it plain that he was not willing to remove any portion of the main wall, because he testified, in response to a question: "Oh, yes, it could be taken off, that is, the footage; that is, not the wall,—the main wall." He was not a party to this action, and the appellant was not required to rely upon any oral assurances made by him with reference to removing the encroachment, thereby taking the chance of being in-

volved in a law suit over the matter. *Walters v. Mitchell,* 6 Cal. App. 410, 92 Pac. 315; *Pasternack v. Alter,* 95 N. J. Eq. 377, 123 Atl. 885.

Aside from this, the assurances given by the owner of the building on lot six did not go to the extent that he would remove the wall of the building where it encroached, and the evidence shows that it encroached to a substantial degree, under the authorities above referred to.

We have not overlooked the fact that the trial court found that, at the time the appellant refused to take title, Mr. Manion had made arrangements to have the encroachment removed, and it would have been removed had the appellant signified his willingness to complete the deal. If this finding is supported, such support must be found in the testimony of Green, the owner of the building, and, as already pointed out, he makes it plain that he would not be willing to remove any portion of the main wall. The declaration in the letter of Mr. Manion, above referred to, to the effect that he was prepared and ready to remove the portion of the building which encroached, was a self-serving declaration and has no probative force, especially in the face of the testimony of Green. It is true that the encroachment of the wall was not referred to in the opinion of the attorney who examined the title report and pointed out certain defects, but the fact that it was not there mentioned, did not prevent the appellant from raising the question when he subsequently ascertained the fact.

We have not mentioned any of the defects in the title pointed out in the opinion of the attorney examining the title report, because it appeared to us that the matter of the encroachment upon lot five of the building erected upon lot six was controlling, and rendered the title not good, and made a showing sufficient to

justify the appellant in recovering back the earnest money paid.

The judgment will be reversed, and the cause remanded, with directions to the superior court to enter judgment in favor of the appellant.

TOLMAN, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.