**Fred A. WOLKEN, Carol L. Wolken, and Daniel L. Wolken, Plaintiffs and Appellees,**

v.

**Leslie L. WADE and Idella S. Wade, Defendants and Appellants.**

No. 15294.

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 1987.

Decided May 27, 1987.

---

A.P. Fuller of Amundson, Fuller & Delaney, Lead, for plaintiffs and appellees.

Gerald M. Baldwin of Baldwin & Kelley, Custer, for defendants and appellants.

ZINTER, Circuit Judge.

This is an appeal from a judgment allowing rescission of an Offer and Agreement to Purchase (Agreement) real estate. Fred, Carol, and Daniel Wolken (Wolkens), appellees-vendees, commenced this action seeking a return of their earnest money from Leslie and Idella Wade (Wades), appellants-vendors. The trial court held that the Agreement was void *ab initio* due to mistake and prospective failure of consideration relating to title defects. It allowed rescission of the Agreement and ordered the earnest money returned to Wolkens. We reverse.

The material facts are not in dispute. On April 27, 1982, Wolkens and Wades entered into the Agreement to purchase a gold mining operation. The operation consisted of two separate interests in real property. The "deeded property" contained a home, a gold processing mill, and some buildings. The sale also included an unpatented placer mining claim described as the "remaining part of Valley Mineral claim no. MMC42392 (SD) and all state and federal permits in their [the Wades] possession" (Valley mineral claim). This placer claim was the source of ore used in the gold mining operation. Placer deposits were removed from the Valley mineral claim and trucked to the deeded property where they were milled and gold was extracted. The placer claim was a material part of the Agreement to purchase the gold mining operation.

A title opinion concerning the merchantability of the deeded property was issued to the Wolkens by an attorney on May 26, 1982. Additionally, the attorney prepared a quit claim deed to the Valley Mineral claim in anticipation of closing; however, Wolkens did not request an examination of the title to the claim.

Wolkens paid $5,000 earnest money on execution of the Agreement and had originally agreed to tender the balance of the purchase price on May 20, 1982. However, at the time of execution of the Agreement, Wolkens were unsure of their ability to raise the balance and the closing date was therefore extended to June 2, 1982. Wolkens were still unable to raise the balance of the purchase price by June 2, 1982, and as a result on June 9, 1982, the parties agreed to further extend the closing date to June 30, 1982, in consideration of the payment by Wolkens of an additional $3,000. These extensions were granted despite the fact Wades moved from the premises and acquired a new residence.

Prior to the extended closing date, Wolkens learned that Ventling Mining, Inc. (Ventling) claimed an ownership interest in the Valley mineral claim superior to that held by Wades. The allegation was that the Bureau of Land Management (BLM) cancelled Wades' placer claim for failure to file proof of annual assessment and Ventling had filed an intervening placer claim to the property. As a result a meeting was held between the parties. Wades convinced Wolkens of their ownership rights by contending that Wades need not file the proof of annual assessment required by BLM regulations. Wolkens accepted this contention although the BLM position was later upheld by the United States Supreme Court in 1985.[1] On the closing date, Wolkens were still unable to raise the balance of the purchase price. Realizing they could not perform, Wolkens relinquished their rights in the Agreement and signed a release of the earnest money.

Upon learning of the BLM's declared abandonment prior to the closing date, Wades promptly began measures to correct their title. On June 23, 1982, Wades staked and filed a "lode" claim on the same property. Although Ventling had staked and filed a "placer" claim on June 4, 1982, on July 28, 1982, Wades obtained a quit claim deed from Ventling conveying all of Ventling's interest in the Valley mineral claim that Wades had agreed to convey to Wolkens in the Agreement.

Shortly after the closing date, Wolkens discovered a June 3, 1982, letter from the BLM declaring the Valley mineral claim cancelled and abandoned as of December 31, 1981, for failure to file proof of annual assessment. On or about July 19, 1982, Wolkens demanded return of their purchase money on the grounds that Wades' claim was cancelled by the BLM and Ventling had acquired title. On Wades' refusal to return the earnest money, Wolkens commenced suit on September 16, 1983. Wolkens' complaint alleged that as of June 30, 1982, Wades could not have transferred sufficient title in the Valley mineral claim because on said date the claim had been revoked and cancelled by the BLM and the property had been restaked in the name of Ventling. Wolkens relied on no other defects of title. However, at the trial held on July 2, 1985, Wolkens introduced evidence

1. *United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985).

of a second title defect. Wolkens alleged that by virtue of a recorded lease, Lyle Heath (Heath) owned superior rights to mine and remove the minerals from the Valley mineral claim.[2]

The issue presented is whether Wolkens, having defaulted on the Agreement because of their inability to obtain financing, may rely on either of these alleged title defects to excuse their breach, rescind the contract and recover their purchase money.

There is no dispute that although Wolkens had knowledge of the potential title defect concerning Ventling's claim to the Valley mineral claim, Wolkens relied on Wades' assurances of good title and released the earnest money without tendering performance or demanding that the defect be cured. Subsequently, Wolkens requested their purchase money back despite the fact they never could have performed. Although the trial court acknowledged the rule of *Rapp v. Petrick*, 61 S.D. 426, 249 N.W. 736 (1933), that generally a vendee must first tender the purchase price prior to rescission, it held such a tender by Wolkens was not necessary because *at the time the parties contracted,* Wades did not have good title to the Valley mineral claim. The trial court reasoned that because title was defective at that time, Wolkens' consent to the Agreement and the subsequent release was obtained by mistake and that the consideration for said agreements would have failed at least in part. The trial court concluded that because of such mistake and prospective failure of consideration, the agreement and release were void *ab initio* and therefore Wolkens were not required to tender the purchase price prior to invoking rescission.

On appeal Wades dispute these conclusions and contend that any alleged defects in their title were remediable defects, or in the alternative, that such defects were waived by Wolkens' knowledge of potential defects, their failure to examine title, and their release of the earnest money. Wades contend that under these facts Wolkens cannot recover their earnest money since Wolkens did not tender payment of the amount due under the Agreement. We agree with Wades.

■ Although the Agreement did not specify the quality of title to be conveyed to the Valley mineral claim, where the contract does not stipulate quality of title, there is an implied obligation on the part of the seller to furnish good or merchantable title, but not necessarily a conveyance in the form of a warranty deed. *Boekelheide v. Snyder,* 71 S.D. 470, 26 N.W.2d 74 (1947). Agreements in contracts for the sale of property whereby vendee agrees to pay and vendor agrees to execute and deliver a deed conveying good title are mutual dependent covenants and neither party is in default until the other has performed or tendered performance of the acts requested of him by the terms of the contract. *Rapp, supra; Benton v. Davison,* 51 S.D. 91, 212 N.W. 500 (1927); *Boekelheide, supra.*

■ This court, like most jurisdictions, has adopted the so-called American Rule providing that ordinarily in the absence of misrepresentation or fraud a purchaser cannot, prior to the time fixed by the contract for conveyance, complain that the seller's title is deficient or encumbered. "An incumbrance or other defect removable at the time of the completion of the purchase is not a ground for rescission." *Renner v. Crisman,* 80 S.D. 532, 537, 127 N.W.2d 717, 720 (1964); *Munderloh v. Seastrom,* 270 N.W.2d 377 (S.D.1978). *See generally* Annot. 109 A.L.R. 242. The general rule which prevents a vendee from rescinding and recovering purchase money because of a mere defect or other weakness in the vendor's title existing on the date of the contract is especially applicable as against a vendee who himself is in default in his payments. *Knapp v. Davidson,* 179 Wis. 493, 192 N.W. 75 (1923). " 'All the vendee may rightfully insist upon

**2.** Wades' grantor, Apex Exploration Corp., had quit claimed the placer claim to Wades on September 21, 1981. Apex had also leased the mining rights to William Healy on October 17, 1979. On October 8, 1983, Healy assigned the lease to Heath and Heath filed a placer location certificate to the property on October 11, 1984. Heath claimed at trial that his rights were superior to those of Wades.

... is that the title be perfect at the time fixed by the contract for final performance.'" *Luck Land Co. v. Linstrom*, 48 S.D. 21, 23, 201 N.W. 707, 708 (1924), *quoting Smith v. Kurtzenacker*, 147 Minn. 398, 180 N.W. 243 (1920).

■ Time for conveyance of good title was not made of the essence in the Agreement. Time is never considered of the essence of the contract, unless by its terms expressly so provided. SDCL 53–10–3. Where time is not of the essence, a contract vendor has a reasonable time to provide good or merchantable title. *Renner, supra; Pederson v. McGuire*, 333 N.W.2d 823 (S.D.1983); *Vangsness v. Bovill*, 58 S.D. 228, 235 N.W. 601 (1931). Although the vendor's title in *Rapp* was not marketable at the time contemplated for closing, we denied recovery of the vendee's earnest money because the vendee never put the vendor in default by offering to perform his part of the contract. As long as such contracts are in force and unrescinded or not abandoned, there can be no recovery of the money paid on the contract unless the vendee shows full performance or tender of performance on his part. *Way v. Johnson*, 5 S.D. 237, 58 N.W. 552 (1894); *Rapp, supra; see generally* Annot. 40 A.L.R. 693.

■ There is, however, a generally recognized exception to the tender rule where the title defects are of such a character that the vendor neither has the title which he agreed to convey, nor in any practical sense any prospect of acquiring such title. If the title defects render the vendor unable to perform, the vendee need not first tender the purchase price to recover payments made. *Hoffman v. Kleinjan*, 54 S.D. 634, 224 N.W. 187 (1929). Furthermore, if the defects in the vendor's title are incurable, a breach by the vendee is excused because the vendor could not have performed and could not have put himself in a position to perform. *O'Hara Group Denver v. Marcor Housing Systems*, 197 Colo. 530, 595 P.2d 679 (1979); *Cohen v. Kranz*, 12 N.Y.2d 242, 238 N.Y.S.2d 928, 189 N.E.2d 473 (1963); *Werth v. Miller*, 64 N.D. 119, 250 N.W. 543 (1933). The differ-

ence is that a vendor with title which cannot be remedied within a reasonable time is automatically in default, whereas a vendor with curable title defects must be placed in default by a tender and demand for good title. *Cohen, supra*, 89 N.E.2d at 476.

In such cases the burden is on the vendee to prove that the alleged defects could not have been cured in a reasonable time. *Burton v. Ryther*, 38 S.D. 342, 161 N.W. 350 (1917). "Such a requirement will encourage defaulting purchasers to ... give advance notice of those defects on which they intend to rely to excuse their breach. A contrary rule would encourage a buyer who breached his contract to search out technical defects in a seller's title which could have been cured had the seller been given notice of their existence." *O'Hara, supra*, 595 P.2d at 685.

■ Evidence of both title defects was introduced by Wolkens. Although the BLM's June 3, 1982, notice declared the placer claim abandoned, the notice also stated that the placer claim could be restaked if no intervening claims were filed. Although Ventling did file an intervening placer claim on June 4, 1982, Wades promptly instituted measures to clear this defect. Wades restaked the claim as a "lode" claim on June 23, 1982. Although the trial court determined that a lode claim was not the same as a placer claim, we need not address this distinction as on July 28, 1982, Wades also obtained a quit claim deed from Ventling of its intervening placer claim. Wolkens produced no evidence of other intervening claims. Thus, the defect involving the BLM's abandonment of the placer claim was cured within a reasonable time.

The second alleged defect concerned the lease claim of Heath. Both the Heath lease and Wades' quit claim title to the Valley mineral claim originated from Apex Exploration Corp.[3] In spite of the lease, Wades had been in open and notorious possession, and had been actively mining the claim. Although Heath testified that he had the exclusive right to mine and remove all minerals from the premises, no evidence

**3.** *See* note 2, *supra*.

was introduced that either Apex, Healy or Heath ever filed the proof of annual assessment work, which was not only required by the BLM, but also by the lease. Furthermore, Heath did not obtain his assignment of the lease from Healy until October 8, 1983, and did not file a placer claim location notice until October 11, 1984, well after the time for performance was reasonably due under the Wolken-Wade Agreement. It is therefore highly questionable whether Heath had superior rights under this lease on June 30, 1982.

Furthermore, "[i]t is generally recognized that enforcement of a contract will not be denied because the consent of a third person is necessary to performance, where it reasonably appears that such third person does or will consent." *Renner, supra,* 80 S.D. at 541, 122 N.W.2d at 722 (citations omitted). Wolkens did not call Healy to testify at trial. This lease was assignable without the consent of Apex and no evidence was introduced that Healy would not have assigned the lease to Wades. Because Wolkens did not notify Wades of this defect until the trial, Wades had no reason to attempt to obtain an assignment from Healy. We believe Wolkens failed to meet their burden of showing that the lease was a defect and that it could not have been cured within a reasonable time.

Even if, however, Wolkens met their burden of proving these defects incurable, Wolkens waived their right of rescission. In *Larson v. Thomas,* 51 S.D. 564, 215 N.W. 927 (1927), we recognized that a vendee may not always retain the right to rescind because the title contracted for cannot be conveyed. A vendee may waive that right by delay or conduct inconsistent with that right. *Larson, supra.* Here Wolkens did not have the title examined but relied upon assurances of the Wades that the title was good and thereafter made settlement on that basis without objection. This amounted to an agreement to accept the title without examination. Citing *Bates v. Smith,* 48 S.D. 602, 205 N.W. 661 (1925), we held in *Larson* that where one agrees to accept title to land without examination of title, he thereby waives his right to rescind because of any defect in the title. In such circumstances, a vendee's only remaining remedy is to have such defects cured or obtain damages for breach of warranty upon discovery of the defect. *Bates, supra; Larson, supra.* Here, Wolkens obtained a title opinion with respect to the deeded property but did not have the title examined to the Valley mineral claim despite their knowledge that Ventling was claiming an interest superior to Wades. Thereafter Wolkens released their earnest money and made settlement without a title examination or making objection to title. Failure to examine title after knowledge of this alleged title defect precludes Wolkens from excusing their breach and obtaining rescission.

Furthermore, even though Wolkens were not aware of the Heath lease at the time they attempted rescission they may not rely upon this after-the-fact alleged defect to justify rescission. The Heath lease was not relied upon by Wolkens in demanding rescission or even in their complaint. Thus, Wades were never given an opportunity to attempt a cure.

In *Munderloh, supra,* we recognized that a vendee who gives his vendor no opportunity to remove a defect should not be heard to complain that they were entitled to rescind because of defects in title first discovered after the fact. In *Earlin v. Mors,* 1 N.J. 336, 63 A.2d 531 (1949), the court refused to grant relief to a vendee who defaulted on a land sale contract and subsequently attempted to excuse his breach and recover his earnest money by relying on alleged title defects discovered after his default. The default in *Earlin,* as herein, was caused by the vendee's inability to obtain financing and the vendees did not give the vendors timely notice of the alleged defect. We agree with the New Jersey Court that under these circumstances the vendees should not be allowed to rely on such defects.

The trial court excused the Wolkens' breach because it incorrectly focused on the character of Wades' title at the time the Agreement and release were executed.

Time not being of the essence, the curability of title depended on Wades ability to cure in a reasonable time after performance was due. Furthermore, since the character of title depended on Wades' ability to cure within a reasonable time after performance was due, it is evident that any mistake was not based on a present or existing fact but a future fact. Mistake of future fact is not a ground for which rescission is allowed. SDCL 53–11–2(1); SDCL 53–4–9; *McDonald v. Miners and Merchants Bank, Inc.,* 310 N.W.2d 591 (S.D.1981); *Williams v. Shamrock Oil and Gas Co.,* 128 Tex. 146, 95 S.W.2d 1292 (Comm.App.Texas 1936) (both dealing with mistake and future ability to cure title defects). Finally, mistake merely renders the agreement voidable not void *ab initio. Beatty v. Depue,* 78 S.D. 395, 103 N.W.2d 187 (1960). Since the Agreement and release were not void *ab initio,* Wolkens were subject to the tender of performance rules and their rights were subject to waiver.

The trial court also relied on this court's decisions in *Halvorson v. Birkland,* 84 S.D. 328, 171 N.W.2d 77 (1969) and *Larson, supra* (both dealing with rescission for failure of consideration), and *Ward v. Reisdorf,* 55 S.D. 322, 226 N.W. 339 (1929) and *Nilsson v. Krueger,* 69 S.D. 312, 9 N.W.2d 783 (1943) (both dealing with rescission for mistake). Its reliance on these decisions was misplaced. In *Halvorson* and *Larson,* this court granted rescission only where the vendor, after being notified of the title defects was unwilling or unable to give good title when called upon to do so. Furthermore, the vendees were not in default themselves. In both cases the vendees fully performed or tendered performance prior to rescission. Neither decision dealing with failure of consideration is applicable to the facts herein.

Similarly, although this court allowed rescission on the grounds of mutual mistake in *Ward,* the purchaser had fully tendered performance. More importantly, the agreement in *Ward* to purchase a car was expressly conditioned on the car not having been previously sold. When it turned out the car had been previously sold, rescission was granted since it was a conditional sale from the beginning. Finally, *Nilsson* involved the setting aside of a general release of a claim for personal injuries. The alleged mistake concerned the workman's existing medical condition at the time the release was executed. It did not involve the future ability of a vendor to cure title within a reasonable time. These decisions on rescission for mistake are also inapposite.

For all of the foregoing reasons we hold that under these facts Wolkens' breach of the Agreement for reasons unrelated to the known and subsequently discovered title defects preclude Wolkens from invoking the equitable remedy of rescission to recover their earnest money. This case is reversed and remanded with directions to grant judgment for the defendants and appellants.

All the justices concur.

ZINTER, Circuit Judge, sitting for HENDERSON, Justice, disqualified.