# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 72

APRIL TERM, A.D. 2022

June 16, 2022

SKYCO RESOURCES, LLP, a Texas
limited liability partnership,

Appellant
(Plaintiff),

v.

FAMILY TREE CORPORATION, a
Wyoming corporation and JD4, LLC, a
Delaware limited liability company,

Appellees
(Defendants).

S-21-0161

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
Brandon L. Jensen, Budd-Falen Law Offices, LLC, Cheyenne, Wyoming.
Argument by Mr. Jensen.

*Representing Appellees:*
Lucas Buckley and Sean Larson, Hathaway & Kunz LLP, Cheyenne, Wyoming.
Argument by Mr. Larson.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*GRAY, J., delivers the opinion of the Court; FOX, C.J., files a concurring in part and dissenting in part opinion, in which BOOMGAARDEN, J., joins.*

\*Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to act on this matter January 18, 2022.

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Skyco Resources, LLP, entered into an agreement with Family Tree Corporation and JD4, LLC, (collectively Family Tree) for the purchase of mineral interests owned by Family Tree.  Before closing, Skyco notified Family Tree that it was terminating the agreement based on title encumbrances and demanded a return of its earnest money.  Family Tree refused because Skyco failed to comply with the agreement's termination provision.  Skyco sued Family Tree for return of the earnest money, asserting claims of breach of contract, breach of the covenant of good faith and fair dealing, conversion, and fraud/intentional misrepresentation.  The district court granted summary judgment to Family Tree.  We affirm in part and reverse in part.

## *ISSUES*

[¶2]    The dispositive issues are:

>    1.    Whether the district court properly granted Family Tree summary judgment on Skyco's breach of contract and conversion claims.
>
>    2.    Whether the district court properly granted Family Tree summary judgment on Skyco's claim for breach of the covenant of good faith and fair dealing.
>
>    3.    Whether the economic loss rule barred Skyco's fraud/intentional misrepresentation claim.

## *FACTS*

[¶3]    In 2019, Family Tree enlisted a broker, Rob Arrowood, to assist in finding a buyer for mineral interests it held in Laramie County, Wyoming.  On October 16, 2019, Mr. Arrowood provided information concerning those interests to Skyco's vice president, R. Brian Coker.  Skyco wanted to purchase Family Tree's mineral interests and develop the minerals.  The parties negotiated a purchase and sale agreement (PSA).  Prior to its signing of the PSA, Mr. Arrowood assured Skyco that Family Tree "held permits to drill for all of the acreage to be included in the leasehold interest that was the subject of the transaction."  Family Tree provided Skyco a spreadsheet which indicated less than 10% of the mineral interests being purchased were subject to a drilling permit issued to third parties.  Thereafter, representatives of Family Tree signed the PSA on December 19, 2019, and Skyco representatives signed on December 20.

[¶4]    Pursuant to the PSA, Family Tree agreed to sell and Skyco agreed to purchase 13,056.68 leasehold acres for $13,709,514.  The PSA provided that time was of the essence

1

in the agreement's performance, and it required that closing be held on or before forty-five days from the PSA's full execution, which was February 3, 2020. It also required that Skyco remit earnest money as follows:

> (III) **Earnest Money:** Within ten (10) days from the execution of this agreement Buyer agrees to pay Seller earnest money in the amount of two percent (2%) of Total Purchase Price or $274,190.28 as a deposit which is non-refundable in the event the Buyer does not complete the transaction, unless terminated pursuant to Section (I)(b)(iii) herein. Upon Closing said earnest money shall be applied to the total purchase price.

[¶5]   Pursuant to the PSA, Skyco could terminate the purchase based on title concerns:

> (I)   **Title:**
>
> > (a)   <u>Title Examination.</u>   Upon execution of this Agreement, Buyer may, at Buyer's option and expense, undertake to obtain an examination of title to the Mineral Interest.
> >
> > (b)   <u>Objections to Title.</u>   In the event Buyer determines title to the Leasehold is subject to ***any encumbrance, defect or issue which renders title to the Leasehold unacceptable to Buyer in its sole discretion***, then Buyer shall promptly advise Seller of such encumbrance, defect or issue and request that Seller remove or correct the same. ***Buyer shall have final approval of all legal, geological, environmental and regulatory issues affecting the property, which approval shall not be unreasonably withheld***. In the event Seller fails to remove or correct such issue, defect or encumbrance within thirty (30) days after notice thereof, Buyer shall have the right and option to:
> >
> > > (i)   Grant a reasonable additional time for Seller to remove or correct such issue, defect or encumbrance;
> > >
> > > (ii)   Waive in writing such issue, encumbrance or defect or any portion thereof; or,

> (iii)   Refuse to accept title to such portions of the Leasehold as are affected by such encumbrance, defect, or issue.  In the event title to more than 50% is refused by Buyer as provided herein, Buyer or Seller shall have the right to cancel this Agreement in its entirety.

(Emphasis added.)

[¶6]   On January 15, 2020, Skyco remitted $300,000 to Family Tree as earnest money.[1] On January 22, Mr. Coker informed J. Christopher Dykes, a vice president of Family Tree, that Skyco needed an extension of the closing date to secure financing for the purchase. On January 23, Mr. Dykes emailed Mr. Coker and Blake Bergstrom, also of Skyco, that an extension of the closing date would require "additional non-refundable earnest money." During its examination of the title to the mineral interests, Skyco had discovered that 67% of the 13,056.18 net mineral acres being purchased were permitted with companies or individuals other than Family Tree.  Skyco could at most develop 33% of the property.  On January 23, the same day that Mr. Dykes sent his email, Mr. Bergstrom emailed the following message to Mr. Dykes:

> While discussing the substance of your and Brian's call, it drew my attention to a schedule of permits we had produced by staff reflecting material impediments to the value of the leasehold.  Due to the complications associated with Wyoming APDs [application for permit to drill] and the lack of any legal test of the proposed/accepted changes associated with overturning existing APDs, it is not reasonably possible to determine DSUs [drilling spacing unit] for the subject acreage.  This serious impediment renders the acreage defective for all material purposes under Section I b iii of the PSA between the Parties . . . .
>
> Skyco rescinds and revokes the PSA and requests return of the earnest money deposit, which exceeded the amount called for in the agreement and totaled $300,000.00.  We appreciate the opportunity to have worked with you in an effort to purchase this acreage.

---

[1] Skyco did not timely pay the earnest money, but the parties executed an addendum to the PSA, which stated that Skyco's "delayed refundable earnest money deposit has not seriously impaired or impacted the terms to that Agreement and does not constitute a breach of contract."

[¶7]    On January 24, 2020, Mr. Bergstrom sent a second email message to Mr. Dykes, which read:

> I also wanted to apologize it took so long for us to review this.  There was the holidays and we actually didn't even notice the contract was changed by y'all . . . so we thought we had a lot more time.  Please confirm this email was received and wire monies as soon as possible.  Thank you.

[¶8]    On January 28, Mr. Coker followed up with another email message to Mr. Dykes. This one read:

> Did you receive Blake's email from last week?  I wanted to make sure that you all got "both" emails, the initial email that requests return of the earnest money as well as the more conciliatory email that apologizes for being a bit hot-headed. Without holding any permits in the name of [Family Tree] or a subsidiary of the same, taken as a whole: the absence of permits, the uncertainty surrounding what will happen with the Anadarko acreage and how that will impact the leasehold, together with the geological uncertainty surrounding the eastern acreage, I agree with Blake's email below.  Please call if you would like to discuss.

No one from Family Tree, including Mr. Dykes, responded to the email correspondence from Mr. Bergstrom or Mr. Coker.

[¶9]    On February 3, 2020, Mr. Coker emailed a letter to Mr. Dykes, which informed Family Tree, that because over 50% of the mineral leasehold was unacceptably encumbered, "I write to give notice of Skyco's termination of the PSA pursuant to Section (I)(b)(iii) of the PSA and demand refund of $274,190.28, plus any overpayment, in earnest money as specified pursuant to Section III of the PSA."  Family Tree again did not respond to Skyco's demand, and on March 16, 2020, counsel for Skyco sent a demand letter to Family Tree's counsel.

[¶10]  On April 14, 2020, Skyco filed a complaint against Family Tree asserting several claims, including claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and fraud/intentional misrepresentation.  Following discovery, the parties filed cross-motions for summary judgment.  Both parties asserted there were no genuine issues of material fact, and each claimed it was entitled to judgment

4

as a matter of law on Skyco's claims.[2]  Family Tree argued that because Skyco did not provide the required thirty-day notice and opportunity for Family Tree to cure any alleged concern with its title, it was not obligated to refund the earnest money.  Skyco argued that it did not have to follow the PSA's notice and cure termination provision because the defects it identified were incurable.  It further argued that if its failure to provide the thirty-day notice was a breach, it was not material because Family Tree remained in possession of the property and the earnest money.

[¶11]  Skyco prepared an authenticated spreadsheet showing that the mineral acres in question were subject to no fewer than eighty-six drilling permits held by approximately eight separate companies.  Mr. Coker by affidavit attested:

> Acquisition of the drilling permits for the minerals rights is a critical necessity for exploration and development of minerals in Wyoming.  Wyoming is a "first to file state," which means that the [first] developer to apply and receive a drilling permit over authorized spaces in a drilling spacing unit becomes the "operator."  The operator owns the exclusive right to conduct (or not conduct) oil and gas drilling within a spacing unit.  A permit to drill lasts two years and can be renewed.  Mineral rights and leasehold owners within [a] drilling spacing unit are at the mercy of the operator.  Stated another way, without a drilling permit, mineral rights and leasehold owners in Wyoming have no right or opportunity to explore for or develop the mineral resource.  Owning the drilling permit is critical to produce oil and gas in Wyoming.

[¶12]  The district court found there were no disputed issues of material fact and granted Family Tree summary judgment on all Skyco's claims.  With respect to Skyco's breach of contract claim, the court found that Skyco breached the PSA when it terminated the agreement without providing the required thirty-day notice and opportunity to cure.  It further found that the breach was material, reasoning that "[r]egardless of who is in control of the earnest money or the property, the Court cannot see Skyco's action as anything but a material breach of the PSA, as Skyco's actions denote its intent to immediately stop performance on its part."  The court also rejected Skyco's argument that the defects could not have been cured and found even if the defects were incurable, this circumstance would not excuse the failure to provide notice and the opportunity to cure.  Ultimately, it ruled:

---

[2] We are able to glean the parties' summary judgment positions only from the district court's order on summary judgment.  Although the materials supporting their motions were designated as part of the record on appeal, neither party designated its motion nor supporting memoranda as part of the record.

Neither party nor the Court can find anything ambiguous about the PSA. It is clear from the contract that the intent of the parties was to draft the PSA in such a way that both parties would be protected from contests over the title of the property. Skyco had the right to raise concerns regarding specific issues and Family Tree had a thirty (30) day period in which [to] quell any of Skyco's concerns. Skyco clearly asserted its desire to rescind the contract and demanded its earnest money back. Given the terms of the contract, Family Tree was justified in its belief that Skyco had breached the PSA, thus withholding the earnest money and disengaging from any contractual obligation was within Family Tree's rights. As there is no dispute as to Skyco's actions, there is no dispute of material fact. Family Tree's *Motion for Summary Judgment* as it pertains to Skyco's claim of breach of contract must be granted.

[¶13] The district court concluded that Skyco's claim for conversion depended on its breach of contract claim and therefore granted Family Tree summary judgment on that claim. As to Skyco's claim for breach of the covenant of good faith and fair dealing, the court found that Family Tree acted as it was entitled to under the PSA and was therefore entitled to summary judgment on that claim as well. The court also ruled that Skyco's fraud/intentional misrepresentation claim failed because it was barred by the economic loss rule.

### STANDARD OF REVIEW

[¶14] "We review a district court's ruling on summary judgment de novo and may affirm on any legal ground appearing in the record." *Miller by & through Travis v. Sweetwater Cnty. Sch. Dist. #1*, 2021 WY 134, ¶ 13, 500 P.3d 242, 246 (Wyo. 2021) (quoting *James v. James*, 2021 WY 96, ¶ 23, 493 P.3d 1258, 1264 (Wyo. 2021)).

We . . . afford no deference to the district court's ruling. *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016). This Court reviews the same materials and uses the same legal standard as the district court. *Id.* The record is assessed from the vantage point most favorable to the party opposing the motion . . . , and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id.*

6

*Miller*, ¶ 13, 500 P.3d at 246 (quoting *James*, ¶ 23, 493 P.3d at 1265).

[¶15] Concerning the parties' burdens on summary judgment, we have said:

> The party moving for summary judgment bears the burden of establishing a prima facie case and showing there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Once that burden is met, the opposing party is obligated to respond with materials beyond the pleadings to show a genuine issue of material fact. When the moving party does not have the ultimate burden of persuasion, it establishes a prima facie case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim.

*Miller*, ¶ 14, 500 P.3d at 246 (citations and quotation marks omitted).

[¶16] Both Skyco and Family Tree asserted there were no disputed issues of material fact, and each claimed it was entitled to summary judgment on all claims. In the case of such cross-motions, we have emphasized the importance of considering each motion independently.

> [E]ach party, as a movant for summary judgment, bears the burden of establishing that no genuine dispute of material fact exists and that the movant is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on his own Rule 56 motion does not automatically indicate that the opposing party has satisfied its burden and should be granted summary judgment on the other motion. The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard. Both motions must be denied if the court finds that there is a genuine dispute of material fact. But if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment.

*White v. Wheeler*, 2017 WY 146, ¶ 39, 406 P.3d 1241, 1251 n.5 (Wyo. 2017) (quoting 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2720 (4th ed. 2016)).

*DISCUSSION*

**I.** ***Despite an express notice and cure provision, a futility defense to repudiation of the contract may apply to Skyco's breach of the PSA and, if it does, entitle it to the return of its earnest money.***

[¶17]  The PSA provided that the earnest money paid by Skyco was "non-refundable in the event [Skyco] does not complete the transaction, unless terminated pursuant to Section (I)(b)(iii) herein." Section (I)(b)(iii) required Skyco to give Family Tree thirty days' notice of any title issue, defect, or encumbrance and allowed it to cancel the agreement if Family Tree failed to remove or correct the issue, defect, or encumbrance. It gave Skyco broad discretion to determine what was an "encumbrance, defect or issue" and gave it "final approval" of "issues affecting the property . . . ." It is undisputed Skyco did not give Family Tree the thirty-day notice required by the PSA.[3]

[¶18]  Skyco makes alternative arguments to support its claim for return of the earnest money: (1) the notice and cure provision was not applicable given its broad discretion to reject title; (2) it did not breach or repudiate the PSA; and (3) any breach was excused under the futility doctrine.

**Applicability of the Notice and Cure Provision**

[¶19]  Skyco argues that because Section (I)(b)(iii) of the PSA states that (1) Skyco, as the buyer, can determine whether any "issue" "renders title to the Leasehold unacceptable to Buyer in its sole discretion," and (2) "Buyer shall have final approval of all . . . regulatory issues affecting the property," it could simply declare title unacceptable and terminate the contract without giving Family Tree notice and an opportunity to cure. It also claims that because it had such broad discretion, any breach by its failure to comply with the notice and cure provisions was immaterial. We reject this interpretation of the PSA because it would essentially nullify the requirement of notice and an opportunity to cure provision found in Section (I)(b)(iii) of the PSA. *See Pope v. Rosenberg*, 2015 WY 142, ¶ 24, 361 P.3d 824, 831 (Wyo. 2015) ("We do not construe contracts in a fashion that renders any provision of them meaningless." (citing *Shaffer v. WINhealth Partners*, 2011 WY 131, ¶ 17, 261 P.3d 708, 713 (Wyo. 2011))). Although under the PSA Skyco had broad discretion to identify "issues" and make a final determination about the acceptability of title, the same provision required Skyco to notify Family Tree of such issues and give it an opportunity to cure. Skyco's ultimate discretion did not render the notice and opportunity to cure requirement a nullity, nor did it make any breach immaterial.

---

[3] When considering cross-motions for summary judgment, we review each movant's evidence separately. It is clear, however, that Skyco did not give Family Tree the notice required by the PSA, and Skyco does not contend otherwise.

8

**Breach or Repudiation by Skyco**

[¶20] Next, Skyco claims its notices to Family Tree cancelling the contract did not actually breach or repudiate the contract, but only "put the Defendants on notice that the Plaintiff intended to cancel the contract if the Defendants were unable to remove or correct any of the issues regarding title." We define a repudiation as follows:

> A repudiation is a manifestation by one party to the other that the first cannot or will not perform at least some of its obligations under the contract. For a repudiation to have legal effect, the threatened breach must be serious. According to the Restatement Second, it must be serious enough that the injured party could treat it as total if it occurred. A repudiation may be by words or other conduct.
>
> Usually[,] a repudiation consists of a statement that the repudiating party cannot or will not perform. The statement must be sufficiently positive to be reasonably understood as meaning that the breach will actually occur. A party's expressions of doubt as to its willingness or ability to perform do not constitute a repudiation.

*Roussalis v. Wyoming Med. Ctr., Inc.*, 4 P.3d 209, 254 (Wyo. 2000) (quoting II E. Allan Farnsworth, *Farnsworth on Contracts* § 8.20, at 470 (1990)).

[¶21] Skyco sent an email to Family Tree on January 23, 2020, stating "Skyco rescinds and revokes the PSA and requests return of the earnest money deposit[.]" On February 3, 2020, one of Skyco's principals again confirmed its repudiation of the PSA: "I write to give notice of Skyco's termination of the PSA pursuant to Section (I)(b)(iii) of the PSA and demand refund [of the earnest money]." Skyco did not express any doubt as to its willingness or ability to perform, but unequivocally announced it would not complete the purchase. Skyco repudiated the contract.

**The Futility Doctrine**

[¶22] Finally, Skyco asserts its breach of the PSA in the form of an anticipatory repudiation is "excused" because it would have been impossible for Family Tree to correct the permitting problems by the time of closing. As a corollary to this argument, Skyco claims Family Tree had the burden of showing it could have corrected the title problems and fully performed its duties under the PSA, and it failed to do so. Skyco's argument relies squarely on the "futility" doctrine.

9

[¶23]  The doctrine of futility is widely accepted as recognized in reputable secondary authorities:

> It is essential that the promisor's [Skyco's] conduct in repudiating the contract be the *cause* of the promisee's [Family Tree's] failure to perform a condition precedent.  Thus, the rule excusing the nonoccurrence of conditions precedent when there has been a repudiation of the contract by the party whose performance is conditional does not apply when the promisee could not or would not have performed the condition in any event, that is, whether or not the promisor repudiated the contract. . . . In such a case, both parties are discharged from their duty to perform the contract.

13 Samuel Williston, *Treatise on the Law of Contracts* § 39:41, at 753–55 (Richard A. Lord ed., 4th ed. 2013) (emphasis added) (footnotes omitted) (Causation; the non-repudiating party's own inability or unwillingness to perform) (and cases cited therein).


[¶24]  The Restatement (Second) of Contracts § 254 (1981) **(**Effect of Subsequent Events on Duty to Pay Damages) states this principle:

> **(1)    A party's duty to pay damages for total breach by repudiation is discharged if it appears after the breach that there would have been a total failure by the injured party to perform his return promise.**
>
> **(2)    A party's duty to pay damages for total breach by repudiation is discharged if it appears after the breach that the duty that he repudiated would have been discharged by impracticability or frustration before any breach by non-performance.**
>
> **Comment:**
>
> *a.    Non-performance by injured party after repudiation.* If the parties are to exchange performances under an exchange of promises, each party's duties to render performance are generally regarded as conditional on the other party's performance, or at least on his readiness to perform (§§ 237, 238, 251, 253).  This principle applies even though one party is already in breach by repudiation.  His duty to pay damages is discharged if it subsequently appears that there would have

10

been a total failure of performance by the injured party. A failure is total in this context if it would have been sufficient to have discharged any remaining duties of the party in breach to render his performance. See § 242. The result follows even if it appears that the failure would have been justified and not a breach. Cf. § 244.

Restatement (Second) of Contracts § 254 & cmt. a (Am. Law Inst. 1981) (and cases cited therein).

[¶25]   17A Am. Jur. 2d *Contracts* § 705 states:

Although the plaintiff need not continue to perform after the other party has anticipatorily repudiated a contract, it does not relieve that party of the need to show an ability to perform as a prerequisite to obtaining a remedy. The plaintiff must still demonstrate, to recover damages, that he or she had the willingness and ability to perform before the repudiation and would have performed if the defendant had not repudiated.

Under the Restatement the obligation to pay damages for a total breach by repudiation is discharged if it appears after the breach that there would have been a total failure by the injured party to perform the return promise or the duty that was repudiated would have been discharged by impracticability or frustration before any actual breach. This language does not distinguish between damages sought by the injured party and damages already obtained from the repudiating party which the injured party seeks to retain.

17A Am. Jur. 2d *Contracts* § 705, at 683–84 (2016) (footnotes omitted).

[¶26]   "The futility doctrine flows out of the principle that 'the law does not require the performance of vain or useless things.'" *All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 905–06 (11th Cir. 2000) (quoting *Fishel v. Yorktowne Mut. Ins. Co.*, 385 A.2d 562, 565 (Pa. Super. Ct. 1978) (citing *Forester v. Teutonia Fire Ins. Co.*, 60 Pa. Super. 151, 156 (1915))); *see also Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991) (noting that a party to a contract may be excused from complying with a notice requirement if notice would be a "useless gesture"). "A party is not required to perform a futile or vain act." *Love v. Beck Energy Corp.*, No. 14 NO 415, 2015 WL 1453338, ¶¶ 52–54 (Ohio Ct. App. March 31, 2015).

11

[¶27]   The Eighth Circuit recognized the general rule that a party, such as Family Tree, who has made an assertion of anticipatory breach and immediate damages is not required to make an offer to perform or to show his ability to do so, **but** the court then noted this rule will apply only when the ultimate "failure to perform conditions [is] induced by the repudiation. . . . [Otherwise], the promisor [Skyco] is entitled to show in defense that the contract is one which the promisee [Family Tree] never could have performed." *Quivirian Dev. Co. v. Poteet*, 268 F.2d 433, 439–40 (8th Cir. 1959).  "[I]f the condition could not or would not have been performed had there been no repudiation of the promise, the promisor is not precluded from asserting the requirement of the condition." *Quivirian*, 268 F.2d at 440 (citation omitted); *see also Stanwood v. Welch*, 922 F. Supp. 635, 642 (D.D.C. 1995) ("A party claiming anticipatory repudiation must show that but for the repudiation, he would have been ready, willing, and able to perform his obligations under the contract."); *SRGC, LLC v. Billy Casper Golf, LLC*, No. 5:17-CV-546-OC-30PRL, 2019 WL 13143971, at *6–7 (M.D. Fla. Jan. 28, 2019) ("Owner argues there is material factual dispute because Florida law also recognizes the application of the futility doctrine to contracts and does not require an opportunity to cure when doing so would be impossible.  The Court agrees." (citing *Leghorn v. Wieland*, 289 So. 2d 745, 748 (Fla. Dist. Ct. App. 1974) (explaining that if a default is irreparable and incurable, then giving notice is useless); *7-Eleven, Inc. v. Kapoor Bros. Inc.*, 977 F. Supp. 2d 1211, 1222 (M.D. Fla. 2013) (holding, "[t]he Court agrees that giving a contracting party an opportunity to cure that which cannot be cured would be a useless exercise," and concluding immediate termination of a contract was proper despite failing to abide by notice and cure provisions))).

[¶28]   Courts have adopted various approaches to the doctrine of futility.[4]  Cases in which the futility doctrine is argued as a basis to excuse a breach of a notice-and-cure provision are fact sensitive, and often turn on resolving disputed issues of fact.  Many courts examine whether the party claiming entitlement to notice is in a position to deliver performance on the contract which would achieve its purpose.  If the entitled party cannot perform (cure), the repudiating party can successfully raise a defense of futility.  For example, Missouri law recognizes the rule as follows:

> The law does not require written notice to be given when doing so would be a vain and useless act. *See, e.g.*, *Home Trust Co. v. Josephson*, 339 Mo. 170, 95 S.W.2d 1148, 1152 (1936); *Darr v. Structural Systems, Inc.*, 747 S.W.2d 690, 694 (Mo. App. 1988).  The application of this general principle of Missouri law is in accord with appellate decisions from other jurisdictions more specifically holding that the failure to give

---

[4] For example, New York allows application of the doctrine only under limited circumstances, where the other party has already repudiated or totally abandoned the contract. *See Point Prods. A.G. v. Sony Music Ent., Inc.*, No. 93 CIV. 4001 NRB, 2000 WL 1006236, at *3–4 (S.D.N.Y. July 20, 2000); *see also E. Empire Constr. Inc. v. Borough Constr. Grp. LLC,* 156 N.Y.S.3d 148, 152 (App. Div. 2021).

> written notice, pursuant to a notice-and-cure provision in a contract, does not prevent immediate termination of the agreement if the breach is incurable.

*Stacey v. Redford*, 226 S.W.3d 913, 918–19 (Mo. Ct. App. 2007) (citations to other jurisdictions omitted); *see also DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 317 P.3d 543, 553 (Wash. Ct. App. 2014) (requiring strict compliance with notice-and-cure provision but holding that breaching party may still defend on basis that product contamination that caused it to refuse further performance could not be cured); *Mint Solar, LLC v. Sam's W., Inc.*, No. 5:19-CV-05167, 2021 WL 1723095, at *11 (W.D. Ark. Apr. 30, 2021) ("The Court disagrees with Mint's characterization that courts only apply the futility defense when the party who would cure has repudiated or abandoned the contract."); *L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 232 (9th Cir. 1989) ("[S]ince [subcontractor] was so far behind schedule, and since it could not have cured its breaches within 48 hours, for [general contractor] to give a 48-hour notice would have been a useless gesture in terms of any benefits to [subcontractor].");  *Young Travelers Day Camps, Inc. v. Felsen*, 118 N.J. Super. 304, 315, 287 A.2d 231, 237 (Dist. Ct. 1972) (camp director unable to remedy breach for failing to secure campers could not rely on notice/cure clause in contract); *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 651 (Pa. 2009) (allowing cancellation of franchise agreement without notice and chance to cure when franchisee was shipping on the side to avoid paying percentages to franchisor; breach went to the heart of trust and loyalty issues); *Duncan v. Woodlawn Mfg., Ltd.*, 479 S.W.3d 886, 899 (Tex. App. 2015) (employee claiming a right to written notice before termination had violated at least two of the incorporated handbook rules, which by their terms permitted immediate termination based on the circumstances).  *Leghorn*, 289 So. 2d at 748 (employee charged with misappropriating corporate funds for his own use could not rely on notice and cure provision given impossibility of curing disloyalty and dishonesty claims).

[¶29]  Similar to these cases, we have recognized futility as a defense to repudiation of a contract.  *Black & Yates v. Negros-Philippine Lumber Co.*, 32 Wyo. 248, 231 P. 398 (1924).[5]  In *Black*, the Court quoted with approval *Geipel v. Smith*, 26 L. T. (N. S.) 361 (1872):

---

[5] In *Anderson v. Cliff Gold Mining Co.*, 47 Wyo. 349, 38 P.2d 334, 335–39 (1934), a dispute arose over a mining lease contract that required the lessee mine a certain tract of land and pay the lessor a percentage of the value of the ore and costs for the use of its equipment.  The lessee found no useable ore and discontinued mining.  The lessor claimed there was ore that could be mined.  After finding that there was no evidence "ore could have been mined so as to produce a profit, a result both parties obviously contemplated by their contract." *Id.* at 337.  The Court, quoting Willis' Thornton on Oil and Gas, § 243 with approval, under the theories of impracticability or impossibility, stated:

> Except for the supposition of the presence of [ore] and its

In *Geipel v. Smith*, *supra*, quoted in *Andrew Miller & Co. v. Taylor & Co.*, 1 K. B. (1916) 402, 413, where it was contended that defendant abandoned performance too soon by sailing away, it was said:

> If the defendants chose to run the risk, and in the event turn out right, they are in the same position as if they had waited a reasonable time and had then sailed away.

> So in the case at bar, the defendant should not be placed in a worse position because it did not wait until the expiration of a reasonable time . . . .

*Black*, 231 P. at 405.

[¶30]   On summary judgment, Skyco bore the burden of introducing evidence that giving notice and an opportunity to cure the alleged encumbrances on the title would have been useless. *All. Metals*, 222 F.3d at 905–06; *O'Hara Grp. Denver, Ltd. v. Marcor Hous. Sys., Inc.*, 595 P.2d 679, 684–85 (Colo. 1979) ("The failure of O'Hara Denver to appear at closing or to make objections to the state of Marcor's title until Marcor attempted to collect liquidated damages places the burden on O'Hara Denver to show that the defects could not have been cured by Marcor within a reasonable time."). Summary judgment is appropriate only if a party, in this case Skyco, fails to present evidence of futility. *Ezer v. Texas Tower Ltd.*, No. CIV.A. H-13-1805, 2014 WL 3669222, at *8–9 (S.D. Tex. July 22, 2014) ("Because Plaintiffs have produced no evidence that they provided notice, nor any evidence that providing notice would have been futile, Texas Tower is entitled to summary judgment[.]"). The district court stated that there were no facts supporting the conclusion that the defects in title could not have been cured. We disagree. Skyco was entitled to all favorable inferences that could be drawn from the evidence in the record at the summary judgment stage of the proceedings. Skyco presented evidence that—drilling permits are valid for two years and may be renewed at the discretion of the permit holder; 67% of the minerals were permitted with companies or individuals other than Family Tree, and there

---

continuation throughout the period of the lease, there would have been no contract. Continuation and profitable production were contemplated. It was demonstrated that at the time of abandonment and refusal to pay the annual royalty there was no [ore] there. The drilling of the wells would have been futile. It is not denied that the drilling would have effectually erased the obligation. Obviously if that had been done, since the gas was not there, the lessor could have collected nothing under the contract and the contract would have ended even though it is silent in that respect.

*Anderson* at 338.

were no fewer than eighty-six drilling permits held by approximately eight separate companies.

[¶31]   Skyco produced sufficient evidence to establish an issue of fact whether compliance with the notice and cure provision would have been futile.  It is appropriate that a jury decide whether Skyco's reasons for repudiation were based on legitimate concerns under the contract and whether it was impossible for Family Tree to cure the defects. *See Meuse-Rhine-Ijssel Cattle Breeders of Canada Ltd. v. Y-Tex Corp.*, 590 P.2d 1306, 1311–12 (Wyo. 1979) ("Not only is there a question of fact presented, but the issue of impossibility of performance is a question normally most suitable for determination by the trier of fact."). Skyco met its burden establishing issues of material fact as to whether Family Tree was able to perform its obligations under the terms of the contract.

**Earnest Money**

[¶32]   If Skyco prevails on its futility defense, forfeiture of the earnest money would unfairly penalize Skyco.  Skyco argues that, if its breach was excused, Family Tree did not suffer any actual damage which would entitle it to retain the earnest money.  The function of earnest money in a contract was explained in *Everett Assocs. v. Garner*:

> Depending on the language used in the contract and the intent of the parties, the existence of an earnest money provision in a real estate contract can have one of three effects in the case of a breach by the buyer.  First, the money could be considered as partial payment of any actual damages which can be proven as the result of the breach; second, the money could be applied as part payment of the purchase price in the enforcement of the contract in a suit for specific performance; and thirdly, the money could be liquidated damages for breach of the contract by the buyer.

*Everett Assocs. v. Garner*, 291 S.E.2d 120, 122 (Ga. Ct. App. 1982).  Where, as in this case, parties seek neither actual damages nor specific performance, they are justified in retaining earnest money only if it constitutes liquidated damages:

> A contractual provision requiring payment of a stipulated sum by one of the parties upon termination or cancellation of the contract will be treated as an enforceable liquidated damages provision rather than an unenforceable penalty only if all three of the following factors are present: First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than a penalty; and third,

15

the stipulated sum must be a reasonable pre-estimate of the probable loss resulting from such a breach.

*Broad. Corp. of Georgia v. Subscription Television of Greater Atlanta*, 338 S.E.2d 775, 776–77 (Ga. Ct. App. 1985) (citing *Thorne v. Lee Timber Prods., Inc.*, 279 S.E.2d 521, 522 (Ga. Ct. App. 1981)).

[¶33]   We addressed earnest money as liquidated damages in *Walker v. Graham*:

> Generally speaking, it may be said that when the damages arising from the breach of the contract which the obligation is given to secure are uncertain in their nature and not readily susceptible of proof by the ordinary rules of evidence, and *are not so disproportionate to the probable damages suffered* as to appear unconscionable, and it is reasonably clear from the whole agreement that it is the intention of the parties to provide for liquidated damages and not a penalty, such a stipulation will be held to be one for liquidated damages.

*Walker v. Graham*, 706 P.2d 278, 281 (Wyo. 1985) (emphasis added) (citations omitted).

[¶34]   The elements of a breach of contract claim are "a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised . . . , and entitlement of [the] injured party to damages."  *Halling v. Yovanovich*, 2017 WY 28, ¶ 13, 391 P.3d 611, 616–17 (Wyo. 2017) (quoting *Schlinger v. McGhee*, 2012 WY 7, ¶ 12, 268 P.3d 264, 268 (Wyo. 2012), *as amended on reh'g* (Feb. 7, 2012)).  "It goes without saying that to warrant a recovery of liquidated damages, there must have been a breach of the underlying contract by the defendant."  24 Samuel Williston, *Treatise on the Law of Contracts* § 65:33, at 358–59 (Richard A. Lord ed., 4th ed. 2018).

> Anticipatory breach, by itself, does not entitle the injured party to damages.  To recover damages, in addition to proving repudiation, the nonbreaching party need only show that it would have been ready and willing to have performed the contract, if the repudiation had not occurred.  Thus, a party's duty to pay damages for total breach by repudiation is discharged if it appears after the breach that there would have been a total failure by the injured party to perform its return promise.

23 Williston, § 63:44, at 656–57; *see also* Restatement (Second) of Contracts § 254.

[¶35]   Here, if Skyco establishes that its compliance with the notice and cure provision is excused, there are no damages, and "both parties are discharged from their duty to perform the contract."  13 Williston, § 39:41, at 755 (and cases cited therein).  On the other hand, if a jury finds that Skyco has not established futility, Skyco's breach was not excused, and Family Tree may be entitled to the earnest money if the earnest money qualifies as liquidated damages and not a penalty.

[¶36]   Because Skyco has raised a material question of fact as to whether it was entitled to a return of its earnest money, its conversion claim likewise remains at issue.  *See Lieberman v. Mossbrook*, 2009 WY 65, ¶ 21, 208 P.3d 1296, 1304 (Wyo. 2009) ("Conversion occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership." (quoting *Cross v. Berg Lumber Co.*, 7 P.3d 922, 929 (Wyo. 2000))).  We turn then to Skyco's claim for breach of the covenant of good faith and fair dealing.

## II.   *Skyco offered no evidence that Family Tree breached the covenant of good faith and fair dealing.*

[¶37]   Wyoming has adopted the Restatement (Second) of Contracts § 205, which provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  *Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 2017 WY 124, ¶ 68, 403 P.3d 1033, 1053 (Wyo. 2017) (quoting *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶¶ 17–18, 18 P.3d 645, 652–53 (Wyo. 2001)).

> The implied covenant of good faith and fair dealing requires that neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement.  Compliance with the obligation to perform a contract in good faith requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party.  A breach of the covenant of good faith and fair dealing occurs when a party interferes or fails to cooperate in the other party's performance.  The purpose, intentions, and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties.  The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties.  In other words, the concept of good faith and fair dealing is not a limitless one.  The implied obligation must arise from the language used or it must be indispensable to effectuate the intention of the parties.  In the absence of evidence of self-dealing or breach of community standards of

17

> decency, fairness or reasonableness, the exercise of contractual rights alone will not be considered a breach of the covenant.

*Id.* ¶ 68, 403 P.3d at 1053–54 (quoting *Scherer*, ¶ 19, 18 P.3d at 653–54).

[¶38]   Skyco claims on appeal that Family Tree breached the covenant of good faith and fair dealing when it retained Skyco's earnest money without attempting to cure the title defects Skyco had identified, or otherwise responding to its notices. It does not contend that it should have been granted summary judgment on its claim, but instead argues that the district court erred in granting Family Tree summary judgment on the claim.

[¶39]   Skyco claims two errors in the district court's ruling. First, it contends the court erred in ruling that a breach of the covenant depended on finding a breach of contract. While we agree a breach of the implied covenant of good faith and fair dealing does not depend on a breach of contract, we disagree that was the basis of the district court's ruling. We have said:

> The implied covenant of good faith and fair dealing is a claim separate and distinct from a breach of contract claim, and the two claims are not mutually dependent. *Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 25, 123 P.3d 579, 589 (Wyo. 2005). Thus, a party may breach the implied covenant of good faith and fair dealing even if it did not breach the express terms of the contract. *City of Gillette v. Hladky Const., Inc.*, 2008 WY 134, ¶ 41, 196 P.3d 184, 199 (Wyo. 2008).

*Bear Peak*, ¶ 68, 403 P.3d at 1054.

[¶40]   The district court ruled:

> Family Tree has not breached the terms of the PSA. Skyco plainly stated its intention to rescind the contract between the parties. Skyco did not, as noted above, have the right to do so without complying with the contracts [*sic*] cure provision. It was clearly, a declaration that Skyco no longer intended to perform. Family Tree at the time [was] not obligated to do anything further. Family Tree's *Motion for Summary Judgment* as it pertains to Skyco's claim of breach of implied covenant of good faith and fair dealing must be granted.

[¶41]   We do not read the district court's ruling as rejecting Skyco's claim on the basis that Family Tree did not breach the PSA. We instead read it to say that Family Tree did what

18

it was permitted to do under the PSA, and for that reason, it did not violate the covenant of good faith and fair dealing. Our law supports that conclusion. *See Bear Peak*, ¶ 69, 403 P.3d at 1054 ("Under Wyoming law, a claim for breach of the implied covenant of good faith and fair dealing cannot exist where a party is simply exercising those right[s] that they are contractually entitled to exercise." (quoting *Harper v. Fid. & Guar. Life Ins. Co.*, 2010 WY 89, ¶ 34, 234 P.3d 1211, 1221 (Wyo. 2010))); *see also Scherer*, ¶ 19, 18 P.3d at 654 n.2 ("A motion for summary judgment may be granted if, under the facts in the record, the party's actions alleged as the basis for the breach of the implied covenant were in conformity with the clear language of the contract."). There is, however, a limitation on this rule, and that limitation leads us to Skyco's next argument.

[¶42] We have held that while a party's exercise of its contractual rights may not serve as a basis for breach of the covenant, a party nonetheless may not exercise its contractual rights in a manner that amounts to self-dealing or a violation of community standards of decency, fairness, or reasonableness. *Jontra Holdings Pty Ltd v. Gas Sensing Tech. Corp.*, 2021 WY 17, ¶ 87, 479 P.3d 1222, 1246 (Wyo. 2021). Skyco contends that questions of fact existed concerning whether Family Tree's failure to return the earnest money violated community standards of decency, fairness, or reasonableness, and those disputed facts precluded summary judgment. In support, it cites to evidence that between January 23 and February 3, 2020, it sent four email messages to Family Tree informing it of Skyco's title concerns, cancelling the agreement, and demanding a return of its earnest money, along with evidence that Family Tree did not respond to its messages or return the money. We disagree that this evidence was sufficient to create a genuine issue of material fact.

[¶43] Skyco did not give Family Tree thirty days' notice of its title concerns, and its termination notice therefore did not comply with the PSA. Family Tree's lack of a response to Skyco's improper notices of termination thus did not interfere with Skyco's justified expectations under the contract or otherwise violate community standards of decency, fairness, or reasonableness, and Skyco offers no reasoning or authority to support its assertion. Because Skyco terminated the agreement without providing the requisite thirty-day notice, and Skyco bears the burden of proving that giving notice and an opportunity to cure the alleged encumbrances on the title would have been useless, Family Tree was entitled to consider the contract terminated and the question of its right to retain the earnest money remains at issue. There is no mention of futility in the contract itself. It is a defense claimed by Skyco for failure to provide the *required* contractual notice. "The covenant of good faith and fair dealing may not . . . be construed to establish new, independent rights or duties not agreed upon by the parties." *Scherer*, ¶ 19, 18 P.3d at 653. Family Tree did not violate its duty of good faith and fair dealing by failing to acquiesce to Skyco's extra-contractual defense.

[¶44] Skyco would bear the burden of persuasion on its claim for breach of the covenant of good faith and fair dealing if this case went to trial. *Universal Drilling Co. v. R & R Rig Serv., LLC*, 2012 WY 31, ¶ 40, 271 P.3d 987, 999 (Wyo. 2012) ("[T]o establish breach of

19

the implied covenant of good faith and fair dealing, the injured party must demonstrate the other party acted in 'bad faith' by violating community standards of decency, fairness or reasonableness[.]" (citing Restatement (Second) of Contracts § 205 cmt. a & d)); Michael H. Graham, *Winning Evidence Arguments* § 301:2 (Dec. 2021 update) ("Plaintiff, the party seeking change, bears the risk of failing to prove the elements of its claim."). This means that if Family Tree made a showing there was no evidence to support the claim, it was entitled to summary judgment unless Skyco came forward with evidence to create a disputed issue of material fact. *See Miller*, ¶ 14, 500 P.3d at 246 ("When the moving party does not have the ultimate burden of persuasion, it establishes a prima facie case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim." (citations omitted)). The only such evidence Skyco has offered is Family Tree's failure to respond to Skyco's untimely notice of title defects and notices of termination. For the reasons discussed, that evidence was not sufficient to create a genuine issue of material fact, and Family Tree was therefore entitled to summary judgment on Skyco's claim for breach of the covenant of good faith and fair dealing.

### III.    The district court correctly ruled that the economic loss rule barred Skyco's claim for fraud/intentional misrepresentation.

[¶45]   The district court ruled that the economic loss rule barred Skyco's fraud/intentional misrepresentation claim and that Family Tree was thus entitled to judgment as a matter of law.[6]  Whether the economic loss rule precludes a claim is a question of law we review de novo. *In re Est. of Gattis*, 2013 COA 145, ¶ 10, 318 P.3d 549, 552.

[¶46]   "The 'economic loss rule' bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property." *Rogers v. Wright*, 2016 WY 10, ¶ 30, 366 P.3d 1264, 1275 (Wyo. 2016) (quoting *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1234–35 (Wyo. 1996)). Its purpose "is to maintain the distinction between those claims properly brought under contract theory and those which fall within tort principles." *Id.* (quoting *Rissler*, 929 P.2d at 1234–35). It is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract." *Id.* (quoting *Rissler*, 929 P.2d at 1235).

---

[6] Skyco's claim was essentially a claim for fraud in the inducement, the elements of which are: "1) the defendant made a false representation intending to induce action by the plaintiff; 2) the plaintiff reasonably believed the representation to be true; and 3) the plaintiff suffered damages in relying on the false representation." *Elworthy v. First Tennessee Bank*, 2017 WY 33, ¶ 41, 391 P.3d 1113, 1124 (Wyo. 2017) (quoting *Claman v. Popp*, 2012 WY 92, ¶ 43, 279 P.3d 1003, 1016 (Wyo. 2012)). As the basis for its claim, Skyco asserted that in three telephone conversations prior to signing the PSA, Mr. Arrowood represented to Mr. Coker that Family Tree held permits to drill for all the leasehold acreage included in the PSA, and there were no issues with the permits, the legal description, or the lands involved. It further asserted that Mr. Arrowood either knew that the representations were false or was at least aware that he did not have a basis for making the statement. Finally, it claimed that had it known that Family Tree held none of the drilling permits, it would not have entered into the PSA or paid the earnest money.

[¶47]   We have recognized, however, that the economic loss rule does not apply to all tort claims alleging only economic damages; "tort liability may still be premised on a duty independent of contractual duties." *Rogers*, ¶ 30, 366 P.3d at 1275 (quoting *Excel Constr., Inc. v. HKM Eng'g, Inc.*, 2010 WY 34, ¶ 19, 228 P.3d 40, 46 (Wyo. 2010)); *see also Rissler*, 929 P.2d at 1235 (noting there may be cases where the rule would not bar a claim for negligent misrepresentation but not where plaintiff contracted to protect against that harm). In particular, in *Excel*, we held the rule does not necessarily bar a claim for intentional misrepresentation, subject to the caveat that the liability must be premised on a duty independent of contractual duties.

> A party may not sidestep contractual limitations by simply pleading an intentional tort.  Recovery on a tort theory requires a showing that a duty independent of contract was violated.  Determining whether a particular intentional tort claim is simply a repackaged contract claim requires consideration of the conduct alleged, its relationship to the contractual duties of the parties, the source of the tort duty alleged to have been breached, and the nature of the damages claimed.

*Excel*, ¶ 31, 228 P.3d at 48 (citations omitted); *see also JBC of Wyoming Corp. v. City of Cheyenne*, 843 P.2d 1190, 1197 (Wyo. 1992) ("[T]ort recovery based on the contractual relationship should only be allowed where the breach constitutes an independent injury over and above disappointment of the plaintiff's expectation interest.").

[¶48]   Skyco contends its claim is based on a duty outside the contract because it is based on Family Tree's duty to speak truthfully during negotiations, which necessarily occur prior to execution of the contract.   We disagree that the timing of the alleged misrepresentations alone should control.  As one court observed:

> If . . . all claims for fraud in the inducement are extraneous or independent of the contract because they occur prior to the formation of the contract itself . . . , every breach of warranty claim could be turned into a tort by a simple affidavit stating, in effect, that the warranty was spoken before it was written. Worse, written disclaimers of warranties could be voided after the fact by the same affidavit, again so long as the oral representations preceded the contract. . . . [A]llowing one party to plead a tort claim based on oral representations by another concerning the performance of obligations which are also contained in a written contract would swallow the economic loss doctrine.

21

*Rich Prods. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 979–80 (E.D. Wis. 1999) (citations and quotation marks omitted), *aff'd*, 241 F.3d 915 (7th Cir. 2001).

[¶49]  The interpretation Skyco would have this Court adopt ignores the basis for the economic loss rule and undercuts its objectives.  The rule recognizes sophisticated parties are able "to provide contractual remedies in their business dealings."  *Rissler*, 929 P.2d at 1235 (citation omitted).  Moreover, its aim is to encourage parties to do just that, "to negotiate toward the risk distribution that is desired or customary."  *Id.* (citation omitted).  Thus, rather than adopting a bright line rule that statements made in negotiations are necessarily separate from the parties' contractual duties, we will determine whether Skyco's tort claim is simply a "repackaged contract claim" based on the considerations we outlined in *Excel*: "the conduct alleged, its relationship to the contractual duties of the parties, the source of the tort duty alleged to have been breached, and the nature of the damages claimed."  *Excel*, ¶ 31, 228 P.3d at 48.

[¶50]  The record shows as follows concerning the *Excel* factors:

- The conduct alleged and its relationship to the contractual duties of the parties: The alleged misrepresentations concerned the nature of the leasehold acres that were the subject of the contract.  The PSA placed the burden on Skyco to obtain a title examination, but it also gave Skyco sole discretion to declare the title unacceptable based on any encumbrance, defect, or issue.  The PSA then shifted the responsibility back to Family Tree to cure the defect to Skyco's satisfaction.  If that did not happen, and more than fifty percent of the property was affected, the PSA allowed Skyco to cancel the agreement and have its earnest money refunded.

- The source of the duty alleged to have been breached: As discussed, the source of the duty that Skyco claims was breached is the duty to speak truthfully during negotiations.  *See Rogers*, ¶ 13, 366 P.3d at 1271 ("[*E*]*ven if someone is not under a duty to speak, if he does speak, he is under a duty to speak truthfully and to make a full and fair disclosure.*" (quoting *Claman v. Popp*, 2012 WY 92, ¶ 43, 279 P.3d 1003, 1016 (Wyo. 2012))).

- The nature of the damages claimed: As to the damages claimed, Skyco claims on appeal that it "suffered damages independent of its claim for breach of contract, including lost business opportunities and worsening of their financial position."  Its complaint, however, claimed only the following damages:

    Based on the assurances from Mr. Arrowood . . . , the Plaintiff delivered the earnest money deposit in accordance with the addendum.  Upon discovery by the Plaintiff that the Defendants did not own the [*sic*] all of the necessary drilling permits, the Defendants have refused to refund the Plaintiff's

22

earnest money deposit. Consequently, the Plaintiff has suffered damages relying on Mr. Arrowood's false representation.

[¶51] Skyco's fraud/intentional misrepresentation claim is exactly what application the economic loss rule is intended to address. The PSA was an agreement negotiated between sophisticated parties who plainly recognized the risk that the mineral interests in play might not meet Skyco's expectations upon close examination. The parties allocated that risk by negotiating a forgiving rescission provision. Skyco demanded the return of the earnest money—the very damages it seeks in its tort claim. *See Rissler*, 929 P.2d at 1235 ("[W]e will not allow [a tort claim] to be used as a method to sidestep contractual duties or to provide a scapegoat for self-inflicted damages."). As this Court observed in *JBC*:

> This is not to say that JBC has *no* independent cause of action based in tort, only that such an action cannot be based upon the fact that the City and Board failed to make timely payment. Our holding on this point seems almost self-evident. Failure to pay sums due under a contract or under arbitration provided for by contract is clearly *ex contractu* rather than *ex delicto*.

*JBC*, 843 P.2d at 1197.

[¶52] For these reasons, we agree with the district court that the economic loss rule barred Skyco's claim for fraud/intentional misrepresentation.

## *CONCLUSION*

[¶53] Skyco's evidence established a material issue of fact as to whether Family Tree was able to perform its end of the bargain. We reverse summary judgment in favor of Family Tree on Skyco's claim for return of its earnest money. We affirm the district court's grant of summary judgment in favor of Family Tree on the remainder of Skyco's claims.

[¶54] We reverse in part, affirm in part, and remand for proceedings consistent with this opinion.

23

**FOX, Chief Justice,** concurring in part and dissenting in part, in which **BOOMGAARDEN, Justice,** joins.

[¶55] I concur in the majority opinion to the extent it affirms the district court ruling. I dissent in part because I do not believe that futility is a defense available to Skyco under the circumstances of this case, and I would therefore affirm the district court's grant of summary judgment to Family Tree in its entirety.

[¶56] Although, as the majority states, we recognize futility as a defense to repudiation of a contract, *see Black & Yates v. Negros-Philippine Lumber Co*, 32 Wyo. 248, 231 P. 398 (1924), we have not considered the extent to which the futility doctrine relieves a repudiating party when the parties have expressly contracted for a mechanism to address futility. I fully appreciate there will be cases in which the futility doctrine should apply to a party's failure to comply with a contract's bargained for notice-and-cure provision. This is not such a case.

[¶57] The principle of freedom to contract permits contracting parties to agree to any terms they wish, so long as those terms do not violate public policy. *Nuhome Invs., LLC v. Weller*, 2003 WY 171, ¶ 9, 81 P.3d 940, 945 (Wyo. 2003) ("This court has often showed its commitment to uphold the right of competent parties to freely contract for various provisions."). These parties agreed Skyco would pay earnest money, and they negotiated the amount. They further agreed the earnest money would be ***non-refundable*** if Skyco did not complete the transaction, unless Skyco terminated the agreement in compliance with its notice-and-cure provision.[7]

[¶58] The notice-and-cure provision the parties negotiated benefitted both parties. It allowed Skyco broad discretion to declare what constituted a title "issue," but protected Family Tree by requiring Skyco to provide it a thirty-day period in which to cure any such alleged defect. The provision thus addressed the risk that title issues may be discovered too late to address them before the closing date and allowed Family Tree to retain the earnest money if Skyco failed in its obligation to give Family Tree the required thirty days' notice of any defect or issue. Skyco has not asserted the earnest money or notice provisions operated as a penalty or otherwise violated public policy, and I therefore see no basis on which this Court may refuse enforcement of the parties' agreement. *See McMurry Oil Co. v. Deucalion Rsch., Inc.*, 842 P.2d 584, 589 (Wyo. 1992) ("It would indeed take an unusual factual situation for this court to invade the agreement of this Buyer and these Sellers to redraft what they defined as the understood result for damages if Buyer became unable or refused to perform."); *see also Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon &*

---

[7] Earnest money forfeitures are generally enforced unless the amount is so unreasonable as to operate as a penalty. 24 *Williston on Contracts* § 65:24 (4th ed. May 2022 update). Skyco has not asserted that the earnest money amount in this case was unreasonable, operated as a penalty, or was otherwise overreaching or unconscionable.

24

*Co.*, 660 N.E.2d 415, 421 (N.Y. 1995) ("Freedom of contract prevails in an arm's length transaction between sophisticated parties such as these, and in the absence of countervailing public policy concerns there is no reason to relieve them of the consequences of their bargain.").

[¶59]  This Court's decision in *McMurry* illustrates its commitment to these principles. There, the parties entered into an agreement for the sale of oil and gas properties for $950,000 and agreed to a closing date of January 12, 1990. *McMurry*, 842 P.2d at 585, 587. Their agreement provided as follows concerning the buyer's right to terminate:

> Buyer shall be entitled to perform, or cause to be performed, at Buyer's sole expense, any such title examination as Buyer deems necessary or appropriate. In the event Buyer determines that any title defects exist, Buyer shall notify Seller, in writing, on or before closing of Buyer's title objections; provided, however, Buyer shall notify Seller promptly of any title defects discovered by Buyer. As used in this paragraph, the term "title defect", shall include the failure of any working interest. Seller shall furnish to Buyer on or before closing such curative data as may be necessary to satisfy Buyer that such defects have been resolved. If Seller is unable to provide Buyer such curative data prior to closing, and Buyer is unwilling to waive any such defects, Buyer may so notify Seller and terminate this agreement.

*Id*. at 586.

[¶60]  The buyer in *McMurry* obtained a title opinion on December 15, 1989, which informed it that another party had a claim to certain unit revenues on a portion of the property. *McMurry*, 842 P.2d at 586-87. In a communication dated January 17, 1990, and received by the sellers on January 26, 1990, the buyer notified the sellers of its title rejection and termination of the agreement. *Id.* at 587. The parties thereafter filed cross-suits over who was entitled to the buyer's $50,000 earnest money deposit. *Id*. at 585. The district court found no breach by the seller, but it concluded that retention of the earnest money was an unjustified penalty and ordered it returned to the buyer. *Id*. This Court reversed. *Id*. at 589.

[¶61]  The Court held "the defendants bargained for and obtained a limited right to cancel which they failed to exercise within the time agreed upon. The cancellation was, therefore, ineffective and the defendants' refusal to perform constituted a breach. . . ." *McMurry*, 842 P.2d at 587 (quoting *Maxton Builders, Inc. v. Lo Galbo*, 502 N.E.2d 184, 186 (N.Y. 1986)). It concluded, "The general principle to be applied is that, in the absence of overreaching or

unconscionability, the parties should be left within the framework of the terms of the agreement that they negotiate." *McMurry*, 842 P.2d at 587.

[¶62]  I see no reason the *McMurry* holding should not apply equally to this case. The PSA provided Skyco a limited right to cancel, conditioned on the requirement that it provide Family Tree thirty days' notice of any concerns with title. Skyco did not provide the required notice, and thus, like the buyer in *McMurry*, it forfeited its right to return of the earnest money.

[¶63]  The notice and cure provision in the PSA prescribed the method by which Skyco was permitted to establish futility, and Skyco chose not to avail itself of that method. The terms of this contract did not require Family Tree to prove an ability to complete the contract in the event of Skyco's repudiation. Rather, the terms required Skyco to give notice and an opportunity to cure which would definitively answer the question of futility. Skyco chose not to do so.[8]

[¶64]  Because Skyco was not entitled to a return of its earnest money, its conversion claim should likewise fail. *See Lieberman v. Mossbrook*, 2009 WY 65, ¶ 21, 208 P.3d 1296, 1304 (Wyo. 2009) ("Conversion occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership.") (quoting *Cross v. Berg Lumber Co.*, 7 P.3d 922, 929 (Wyo. 2000)).

---

[8] The cases cited by Skyco do not change this result. *See Wolken v. Wade*, 406 N.W.2d 720 (S.D. 1987); *O'Hara Grp. Denver, Ltd. v. Marcor Hous. Sys., Inc.*, 595 P.2d 679 (Colo. 1979); *Cohen v. Kranz*, 189 N.E.2d 473 (N.Y. 1963). None of these cases addressed a buyer's attempt to cancel a purchase agreement pursuant to its cancellation or termination provision. They instead stand for the common law rule that "if the defects in the vendor's title are incurable, a breach by the vendee is excused because the vendor could not have performed and could not have put himself in a position to perform." *Wolken*, 406 N.W.2d at 724 (quoting *O'Hara* and *Cohen*). Notably, these cases concern title defects as that term is generally understood, rather than title defects as defined by the parties' agreement. *See Wolken*, 406 N.W.2d at 722 (third party had superior ownership interest in mineral claim buyers were purchasing); *O'Hara*, 595 P.2d at 684 (undisputed that title was encumbered by reservation of mineral rights in third person rendering seller's title unmarketable); *Cohen*, 189 N.E.2d at 474-75 (concerns with legality of structure on premises). In this case, Skyco declared a title defect pursuant to a provision of the PSA that gave it "sole discretion" to identify any unacceptable "issue" with the property's title.  Skyco never asserted that Family Tree did not own the mineral interests it was selling, or that they were otherwise unmarketable. Instead, Skyco asserted a title defect based on issues with the interests that made them less valuable to it. Under the PSA, that was its right, but it had to assert that right in compliance with the PSA's terms. It should not be permitted to seek the shelter of a common law rule which operates outside the terms to which it agreed.